SLIP OPINION

Cite as 2015 Ark. App. 220

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-14-838

| | | |
|---|---|---|
| STEVEN VAN TA | | **Opinion Delivered** April 8, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | | [NO. CR-2012-405] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JAMES O. COX, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

On September 9, 2014, the Sebastian County Circuit Court revoked appellant Steven Van Ta's suspended sentences and sentenced him to serve six years' imprisonment followed by a ten-year suspended imposition of sentence (SIS). Ta's only argument on appeal is that there was insufficient evidence to revoke his suspended sentences. We disagree and affirm the revocation.

### I. *Procedural History*

In May 2012, Ta pleaded guilty to four charges: conspiracy to possess roxicodone with purpose to deliver, for which he received a ten-year SIS; possession of drug paraphernalia, for which he received a six-year SIS; possession of a Schedule VI controlled substance, for which he received a one-year SIS; and refusal to submit to arrest, for which he received a ninety-day SIS. Ta was given terms and conditions of his suspended sentences, which

provided, among other things, that he not violate any laws and that he pay a fine, costs, and fees.

The State filed a petition to revoke in July 2014, alleging that Ta had violated the terms and conditions of his suspended sentences by committing aggravated assault on a family or household member and terroristic threatening and by failing to pay his fine, costs, and fees.

## II. *Revocation Hearing*

At the revocation hearing, the State entered a ledger into evidence, with no objection by defense counsel, reflecting an outstanding balance on Ta's fine, costs, and fees of $1,156.

Vankham Sisouphanh testified that Ta was her live-in boyfriend of several months when, on July 4, 2014, he "flipped out," pulled her off of the couch, and dragged her to the kitchen where he straddled her and told her that if she ever left him, he would kill her. Sisouphanh testified that Ta grabbed a knife and that, when she told him she needed to pick up her children, he said she "might not make it." Sisouphanh nevertheless insisted that Ta had never done anything like that before and that she was not afraid of him.

Dwight Roam, a patrolman with the Fort Smith Police Department, responded to a disturbance call at Sisouphanh's residence. There was testimony that Sisouphanh had gone to her cousin's residence and that the cousin had called the police. Because Sisouphanh was not at her residence, the police left; however, the officers were called back to the residence later that night. Roam testified that Sisouphanh claimed that Ta had become irate for no reason. According to Sisouphanh, Ta had pinned her down on the kitchen floor and began stabbing a knife into the floor beside her head until the tip broke. Roam saw what looked

2

like stab holes in the linoleum. Also, Roam observed a knife on the kitchen counter that was missing its tip. Roam testified that Sisouphanh appeared fearful and was adamant that she did not want Ta at the residence. Sisouphanh told him that Ta had a history of violence in that he had punched holes in the walls and had stabbed the walls with a screwdriver.

The trial court found that Ta committed first-degree terroristic threatening by stating that he would kill the victim if she left him. The trial court was "uncertain" whether the State could prove aggravated assault on a family or household member but concluded that the evidence proved, at minimum, third-degree assault on a family or household member. With regard to Ta's fine, the trial court found that the State had proved there was an outstanding balance and noted that it was Ta's burden to show some reason for failing to pay what he owed. The trial court noted that Ta looked like "a healthy young fellow" who could work, yet it had been almost two years since Ta had paid anything.

III.   *Standard of Review*

If a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension, the court may revoke the suspension at any time prior to the time it expires. Ark. Code Ann. § 16–93–308(d) (Supp. 2013). Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of a suspended sentence. *Sherril v. State*, 2014 Ark. App. 411, 439 S.W.3d 76. The State bears the burden of proof, but need only prove that the defendant committed one violation of the conditions. *Id*. On appeal, the trial court's decision will not be reversed unless it is clearly against the preponderance of the evidence. *Id*. Because the determination of a preponderance

of the evidence turns on questions of credibility and weight to be given testimony, we defer to the trial court's superior position. *Id.*

## IV. *Sufficiency of the Evidence*

### A. First-Degree Terroristic Threatening

A person commits the offense of first-degree terroristic threatening if, with the purpose of terrorizing another person, he threatens to cause death or serious physical injury to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2013). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Supp. 2013). Evidence that it was a person's conscious object to cause a person fright constitutes proof that the defendant acted with the purpose of terrorizing the person. *Cauffiel v. State*, 2013 Ark. App. 642.

Ta contends that it is clear he did not act with the purpose of terrorizing Sisouphanh given her hesitation to testify,[1] her account of the events—she was confused and did not know what had really happened, and her testimony that his actions were uncharacteristic. Ta asserts that Sisouphanh "seemed to take as a threat" his statement that she might not make it to get her kids.

Sisouphanh's actions are not determinative of whether Ta acted with the purpose of terrorizing her. The trial court could reasonably conclude that pinning Sisouphanh down and

---

[1]The initial hearing was continued because Sisouphanh, a subpoenaed witness, refused to testify and was held in contempt of court.

stabbing a knife into the floor around her head is purposeful conduct and that the purpose could not be anything other than evoking fear of death or serious physical injury. Moreover, Ta's statement that he would kill Sisouphanh if she left him was an unequivocal death threat. Considering Ta's conduct in conjunction with his words, we cannot say that the trial court's finding that Ta committed first-degree terroristic threatening was clearly against the preponderance of the evidence. Although this one violation is sufficient to support the revocation, *Sherril*, *supra*, we will briefly discuss Ta's other points.

### B. Aggravated Assault on a Family or Household Member

According to Ta, Sisouphanh could not have felt there was substantial danger of death or serious physical injury, or else she would not have returned to the residence alone and she would not have asked only that he be escorted from the residence.[2]

Here, the trial court found that Ta had committed the lesser-included offense of third-degree assault on a family or household member by a preponderance of the evidence.[3] *See, e.g.*, *Wooten v. State*, 32 Ark. App. 198, 799 S.W.2d 560 (1990) (modifying aggravated-assault conviction to lesser-included offense of third-degree assault). Ta does not challenge the trial court's finding that he committed third-degree assault on a family or household member.

---

[2]A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely engages in conduct that creates a substantial danger of death or serious physical injury. Ark. Code Ann. § 5-26-306(a)(1) (Supp. 2013).

[3]A person commits third-degree assault on a family or household member if the person purposely creates apprehension of imminent physical injury. Ark. Code Ann. § 5-26-309(a) (Supp. 2013).

Cite as 2015 Ark. App. 220

This court will affirm a revocation where the appellant fails to challenge the trial court's independent, alternative basis for revocation. *See, e.g.*, *Bedford v. State*, 2014 Ark. App. 239.

### C. Failure to Pay the Fine, Costs, and Fees

Ta maintains that the State failed to present any evidence that he willfully failed to make payments on the fine, costs, and fees. Where the alleged violation involves the failure to pay ordered amounts, after the State has introduced evidence of nonpayment, the burden shifts to the probationer to provide a reasonable excuse for the failure to pay. *Peals v. State*, 2015 Ark. App. 1, ___ S.W.3d ___. It is the probationer's obligation to justify his failure to pay, and this shifting of the burden of production provides an opportunity to explain the reasons for nonpayment. *Id*. Because Ta failed to offer any reasonable explanation for his failure to pay, the trial court's conclusion that his failure to pay was inexcusable was not clearly against the preponderance of the evidence.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Aubrey L. Barr*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.