Cite as 2020 Ark. App. 88

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-19-524

| | | |
|---|---|---|
| | | Opinion Delivered: February 5, 2020 |
| PAUL MITCHELL LILLY | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-17-3260] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Paul Lilly was convicted at a bench trial of first-degree terroristic threatening and received seventy-two months' probation. On appeal, Lilly challenges the sufficiency of the evidence and asserts that because his threats were not true threats, he was not acting with the purpose of terrorizing anyone. We affirm.

The evidence at trial established the following: on or about August 29, 2017, Paul Lilly, Sr. made the following post on the Department of Veterans Affairs' (VA's) Facebook page:

> I'm a v.a. rights violated veteran and I say all v.a. employees are about as useful as tastebuds on an ass hole, fuck em all , kill em all and let God sort them out they've cist my son and I the home his grandmother left to him , 2 vehicles ,they recently raised my service connection from 50%to 70 % and they did it in my dead brothers birthday whom died the morning I got to their federal v.a. prison in fort worth Texasfor an evaluation that says I'm bipolar and I'm not bipolar , I'm just pissed

24/7 at the v.a. causing me to not be with my family and they further mORE caused the death of my mother with their unlawful piece of paper , no she wasnt a veteran but she was loved beyond measure, we couldn't get an evaluation on her when she pulled a pistol on me at 4 am. In the morning cause I got up and she threatened to shoot me too , the state prosecutors office in benton broke the unlawful indemnity when they arrested her for something that the v.a.'s employee indemnified her against which was 2 two counts of premeditated attempted murder downgraded to 2 counts of aggravated assault on a family member but she never made it to trial as she had a blowout of an artery in her aorta ( benton Arkansas police department ) and the saline county prosecutors office ada Vince Shoptaw downgraded those charges to aggravated assault on a family member both of which she was indemnied against by Herbert Lynn Hemphill of the v.a. In 2004 .it looks to me like the v.a. isn't going to be happy until they've caused me to kill someone , preferably one of them , if I knew an ISIS terrorist with a nuke, I'd pay them to burn the v.a. at 10 million degrees Fahrenheit, it's a good thing for me I have friends from Memphis, whom have 3 nukes and 400 hevdbd's so I hate to say that I'm the only thing standing between the v.a. and a 40,000 foot high nuclear fireball , so they might want to start treating me a little better or I just might leave the central arKansas area and let my friends from Tennessee handle the v.a. their way , then again maybe I'll stay here while and when they do it, I've tried to handle this in a civilised manner oh yeah and they've cost my son and I $120,000 In tools when the v.a. got me thrown in the state hospital for 6 month's and my son could only pay the house and lot payment but not the utilities for the home cause the state hospital took my social security while I was in the state hospital. More to follow !

Someone at the VA headquarters in Washington, D.C., saw the post and was concerned enough to report it to Kris Raper, a special agent with the VA. Raper spoke with Lilly and recorded a statement. Raper explained to Lilly that because Lilly is a veteran who is trained in how to shoot and kill people, his threats on Facebook had to be taken seriously. In the statement, Lilly explained that he was upset because he believed that the VA owed him money, had violated his rights, and was not providing him necessary services or medication. Raper testified that Lilly further provided that he was "venting," "did not intend to hurt anyone," and was "just being a smartass." Lilly did not testify at trial.

Lilly moved to dismiss, and it was denied. The trial court found Lilly guilty of first-degree terroristic threatening, and Lilly appeals. On appeal, Lilly contends that he (1) did not represent a true threat and thus his speech was protected under the First Amendment and (2) lacked the purposeful intent to terrorize others.

A person commits the offense of terroristic threatening in the first degree if, with the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2019). The conduct prohibited by the statute is the communication of the threat with the purpose of terrorizing another. *Smith v. State*, 296 Ark. 451, 455, 757 S.W.2d 554, 556 (1988).

A motion to dismiss during a bench trial is a challenge to the sufficiency of the evidence. Ark. R. Crim. P. 33.1 (2019). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Foster v. State*, 2015 Ark. App. 412, 467 S.W.3d 176. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* And we must view the evidence in the light most favorable to the verdict. *Id.*

In his motion to dismiss, Lilly argued that his speech was protected under the Arkansas and United States Constitutions. He argued that his Facebook post was not a true threat. The court found that his statements were true threats and not mere hyperbole.

Our supreme court addressed the issue of true threats in *Jones v. State*, 347 Ark. 409, 64 S.W.3d 728 (2002). There, it considered whether words contained in a rap song, in which the defendant threatened to kill a classmate and her family, constituted a "true threat." It concluded it did, after considering the five factors announced in *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996). The five factors, while not exclusive, are (1) the reaction of the recipient of the threat and of other listeners; (2) whether the threat was conditional; (3) whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence; (4) whether the threat was communicated directly to its victim; and (5) whether the maker of the threat had made similar statements to the victim in the past. *Dinwiddie*, 76 F.3d at 925. The goal of the court is to conduct an objective analysis focusing on how a reasonable person would have taken the statement and using the *Dinwiddie* factors. *Jones*, 347 Ark. at 421, 64 S.W.3d at 736.

Here, Lilly, a former marine and VA patient, communicated directly to the VA that "it looks to me like the VA isn't going to be happy until they've caused me to kill someone, preferably one of them" and, regarding VA employees, to "kill them all and let God sort them out." A VA employee was very concerned by the statement, deleted it from the Facebook page, and notified investigators. In the recorded interview, Raper explained that when dealing with veterans who are trained to shoot and kill people, they have to take these kinds of threats seriously. Viewing these factors together, we conclude that it was reasonable for the VA to take Lilly's statement as a true threat. *See, e.g.*, *Jones*, 347 Ark. at 422, 64 S.W.3d at 736 ("Viewing these factors together, we conclude that a reasonable

4

person in Arnold's position would have taken the rap song as a true threat."). Accordingly, we affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Omar F. Greene*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.