Cite as 2026 Ark. App. 201

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR-25-435

| | |
|---|---|
| TYLER DYLAN BROCK<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** April 1, 2026<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63CR-23-205]<br><br>HONORABLE JOSH FARMER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Tyler Dylan Brock appeals the judgment revoking a six-year probation sentence the circuit court imposed in May 2023 after he pleaded guilty to aggravated assault of his mother.[1] The conditions of probation required him to obey all federal and state laws. The State filed a timely petition to revoke alleging he broke that condition on 20 December 2024 by committing terroristic threatening. The victim was again his mother, Tonya Barnes.

Tyler was mentally unwell. His doctors had gone back and forth between diagnoses of bipolar I and schizoaffective disorder. He had been on medication before; Tonya said the medications were effective. But Tyler hated taking them. She testified that she went

---

[1]Aggravated assault of a family or household member is a Class D felony punishable by imprisonment for up to six years. Ark. Code Ann. §§ 5-26-306(b) (Supp. 2023) & 5-4-401(a)(5) (Repl. 2024).

to meet him the morning of December 20 after he called her from someone else's phone. He had gotten rid of his phone and his clothes. He had spent the previous week living in the woods in a concrete trench under a bridge.

She took him to her church to try to get housing assistance. His behavior there was fine. She took him to Walmart then for some things to get him through the week. Tyler became very agitated. She tried to calm him down, and things escalated. His nostrils were flared, and his eyes were dark. He wouldn't calm down. "He didn't say he was going to kill me[,]" Tonya said. "He just told me that God had told him to kill me." Her mind "automatically went back" to his last offense, "when he did try to kill me."[2] He called her a "fucking bitch" and a "fucking murderer" because she had put him in treatment facilities in the past. She testified that she called police, and obtained an order of protection against Tyler, because "I'm terrified of my son. I love him with all my heart, but I'm scared to death of him." Tyler admitted he had told his mother that God told him to kill her. Pressed on the point, he responded, "Sir, I have a mental diagnosis. All of it is on record."

Tyler appeals the circuit court's finding that he committed first-degree terroristic threatening and its decision to sentence him to the Arkansas Division of Correction instead of "HOPE Court" as he requested.

A person commits first-degree terroristic threatening when "[w]ith the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or

---

[2]The criminal information alleged that Brock, "under circumstances manifesting extreme indifference to the value of human life, threatened to kill his mother, tried to stab her with a knife, and struck her in the stomach." There was no testimony at the revocation hearing about the details of the attack.

2

substantial property damage to another person[.]" Ark. Code Ann. § 5-13-301(a)(1)(A) (Repl. 2024). The statute prohibits "the communication of a threat with the purpose of terrorizing another person." *Adams v. State*, 2014 Ark. App. 308, at 6, 435 S.W.3d 520, 524. A person acts purposely with respect to conduct or a result of conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2024). Because communications are ordinarily protected by the First Amendment, the communication must qualify as a "true threat." *Child v. State*, 2025 Ark. App. 76, 705 S.W.3d 904.

Our test for a true threat is "an objective analysis focusing on how a reasonable person would have taken the statement" with five nonexclusive factors:

> (1) the reaction of the recipient of the threat and of other listeners; (2) whether the threat was conditional; (3) whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence; (4) whether the threat was communicated directly to its victim; and (5) whether the maker of the threat had made similar statements to the victim in the past.

*Lilly v. State*, 2020 Ark. App. 88, at 4, 596 S.W.3d 509, 511.[3] Significantly here, the "reasonable person" in that inquiry is one who knew what the victim was proved to know about the defendant's relevant qualities—his propensity for violence, for example. *See id.*

---

[3]Standing alone, a purely objective test might seem to violate the requirement that the prosecution prove a defendant charged with communicating threats of violence had "some subjective understanding" amounting at least to recklessness "of the threatening nature of his statements." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). However, the defendant in *Counterman* was charged under a stalking statute that prohibited communications that were objectively distressing in volume, regardless of their content. *See id.* at 71 (quoting Colo. Rev. Stat. § 18-3-602(1)(c)(2022)). Under Ark. Code Ann. § 5-13-301(a)(1)(A), the subjective understanding *Counterman* requires is established by the requirement to prove the defendant acted "[w]ith the purpose of terrorizing another person."

Generally, a defendant cannot avoid liability for conduct he means to be received as a threat with niceties in how it is communicated. For example, a defendant's public Facebook post just after a police encounter, "i dont care if a douche is wearing a silver star on his chest he steps foot on my land or fucks with my shit hes dead," supported a conviction, though the officer was not tagged in the post and learned about it from third parties. *Pinney v. State*, 2020 Ark. App. 467, at 3, 609 S.W.3d 671, 675. Saying "this school needs to blow up[,]" *Child*, 2025 Ark. App. 76, at 4, 705 S.W.3d at 906, and "the VA isn't going to be happy until they've caused me to kill someone, preferably one of them[,]" *Lilly*, 2020 Ark. App. 88, at 4, 596 S.W.3d at 511, were actionable threats in the circumstances, though violence was threatened implicitly, not through a direct statement of personal intent. (Why bother saying such things except to communicate the menacing inference that violence would follow?) Even words are not necessary. We have held that "stabbing a knife into the floor around" a victim's head was purposeful conduct, and a finder of fact could conclude that "the purpose could not be anything other than evoking fear of death or serious physical injury." *Ta v. State*, 2015 Ark. App. 220, at 5, 459 S.W.3d 325, 328.

Again, Brock was on probation for attacking and trying to kill his mother. That background was known to both of them. Telling her, in a rage, "God told me to kill you" could only have been intended to terrorize her. It was a sufficient threat in the circumstances.

Finally, Brock challenges the court's decision to sentence him to six years' imprisonment instead of extending his probation or sending him to "HOPE court." He acknowledges, though, that the sentence the circuit court imposed was a lawful one for this

4

offense, and we virtually never disturb a circuit court's decision to impose a particular sentence within the statutory range. The circuit court did not abuse its discretion by denying Brock's request for an alternative sentence here. *See Rackley v. State*, 2025 Ark. App. 369, 716 S.W.3d 219; *Honeycutt v. State*, 2020 Ark. App. 449, 608 S.W.3d 631.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*The Law Offices of J. Brent Standridge, P.A.*, by: *J. Brent Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.