DeJuan TRAMMELL *v.* STATE of Arkansas

CA 99-1085                                    16 S.W.3d 564

Court of Appeals of Arkansas
Division II
Opinion delivered May 10, 2000

*Wendy Coffey*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Judge. DeJuan R. Trammell was adjudicated to be a juvenile delinquent by reason of terroristic threatening. On appeal he challenges the sufficiency of the evidence to show that he committed the offense of first-degree terroristic threatening, a Class D felony. The State responds that the issue was not preserved because appellant filed to renew his motion for directed verdict at the close of all the evidence. The abstract confirms that at the conclusion of the State's case appellant moved for a directed verdict on the ground that the State had not proven the element of communicating the threat; the motion was not, however, renewed at the conclusion of all the evidence. Therefore, as explained below, we are prohibited by our rules of criminal procedure from addressing the merits of appellant's argument.

A person commits the offense of first-degree terroristic threatening if, with the purpose of terrorizing another person, he threatens to cause physical injury to a teacher or other school employee acting in the line of duty. *See* Ark. Code Ann. § 5-13-301(a)(1)(B) (Repl. 1997). At the adjudication hearing, the State presented evidence regarding actions by appellant when he was ten years old and a fifth-grade student at Sutton Elementary School in Fort Smith. Testimony was given by Linda Rupe, appellant's teacher in both the fourth and fifth grades; by Nicole "Nikki" Shepard Misner, who taught in the room across the hall from Ms. Rupe; and by Charles Shipman, the school's principal. Their testimony revealed that on January 22, 1999, Ms. Misner assigned "detention" to about twenty students, including appellant, who did not line up properly at recess. Appellant protested, as did other students, that he "wasn't doing anything," and he seemed no more upset than the others.

Appellant said nothing further to Ms. Misner. He went straight to his desk when he entered his classroom, but he refused to get out materials for his mathematics assignment. Ms. Rupe, who had worked with him on anger management, could see that he was angry. Appellant began writing and drawing on a sheet of paper. She looked at his drawing about five times while she walked around and monitored the classroom. She let him cool down and continue drawing, but she approached him at some point, acting on information she had received, and asked for "the gun." Nervously, he told her that the gun was not real. He produced a toy gun from his desk and gave it to her. At her request, he also gave her the paper on which he had drawn and written.

Ms. Rupe took appellant to Mr. Shipman, to whom she gave the note and toy gun. Mr. Shipman showed those items to Ms. Misner in the afternoon. Appellant was suspended from Sutton Elementary for five days, but he never returned. Appellant was not arrested that day even though a police officer was called to the school and informed about the incident.

The drawing that Ms. Rupe took from appellant, included in appellant's addendum as State's Exhibit No. 2, shows a person lying in a horizontal position. An arrow connects the figure to the words "that is Nikki!!" Another person stands over the first person, holding what appears to be a gun; words from his mouth appear to be "hu hu hu," but are somewhat illegible. Above the drawing is written the following, reproduced as closely as possible with original punctuation and spelling:

> I wich that all the teachers' were dead who at Sutton. And some of the students' I hit to! And I wich *Nikki* was *dead* to. *Nikki* the teacher who is across the hall.
>
> I mean Nikki across the hall!!

The above testimony and evidence was presented during the State's case-in-chief. On cross-examination, Mrs. Rupe denied telling appellant's mother that appellant had thrown his note into a restroom trash can.

After the denial of his motion for directed verdict, appellant presented his defense in the form of testimony by his mother and Ms. Misner, which revealed the following version of events. Appellant began taking Ritalin in the fourth grade, but it had been stopped after about a year because it had not helped him. His mother had tried to get counseling for him, starting while he was at Sutton, but her insurance wasn't covering it and nothing came of her requests for help at the school. Appellant transferred to another school after the incident at Sutton, and things got better. Appellant told his mother that he had received the toy gun from a little boy on the school ground in trade for a bicycle ride. Appellant was punished at home after the January incident by being kept inside for a month with no television. He told his mother that he wrote the note because he wanted to put his feelings on paper, and he told her that he didn't mean any harm. Ms. Rupe told her that appellant had

thrown the note into a trash can in the restroom. He was not arrested until March 29, 1999.

■ The rules of criminal procedure are applicable to juvenile delinquency proceedings. Ark. Code Ann. § 9-27-325 (Repl. 1998); *L.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998). The rule that controls our review of this juvenile adjudication, Ark. R. Crim. P. 33.1, was amended by per curiam order of the Arkansas Supreme Court less than a month before the date of the adjudication hearing, held on May 4, 1999. This seems an inadequate time for the trial judge and the attorneys to reasonably learn of the change.

It is the amended rule, regrettably made effective as of the date of the per curiam, that prohibits our addressing the merits of this appeal. The per curiam reads as follows:

We hereby adopt, *effective immediately*, these amendments and republish Rule 33.1 as set out below:

*RULE 33.1. Motions for Directed Verdict and Motions for Dismissal.*

(a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

(b) *In a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of all of the evidence.* The motion for dismissal shall state the specific grounds therefor. *If the defendant moved for dismissal at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all of the evidence.*

(c) *The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment.* A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. *A renewal at the close of all of*

> *the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal.*

*In Re Ark. R. Crim. P. 33.1*, 337 Ark. 621 (1999) (emphasis added).

■■ The reporter's note to Rule 33.1 states that the requirement regarding bench trials, found in subsection (b), is a change in previous procedure and overrules prior case law. Although the incident leading to these proceedings was committed prior to the effective date of the rule's amendment, application of the new requirement does not violate constitutional prohibitions against *ex post facto* laws because it does not criminalize conduct that was previously noncriminal, does not increase the severity or harshness of the punishment for the offense, and does not deprive appellant of a defense that was available to him at the time he committed the offense with which he was charged. *See Williams v. State*, 318 Ark. 846, 887 S.W.2d 530 (1994). Thus, appellant's failure to renew his directed-verdict motion at the close of all the evidence precludes appellate review of his challenge to the sufficiency of the evidence.

Affirmed.

ROBBINS, C.J., and NEAL, J., agree.