Anthony ROBERTS *v.* STATE of Arkansas

CA 01-1406                                      78 S.W.3d 743

Court of Appeals of Arkansas
Division IV
Opinion delivered June 26, 2002

*William R. Simpson, Jr.*, Public Defender, by: *Stacy D. Fletcher*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Anthony Roberts was a seventh-grade student at Poplar Street Middle School. In vocal music class his teacher, Ms. Cortney Meador, examined his notebook and found a page entitled "Hit List (To Shoot List)." Under the caption were nineteen names of fellow students.

The State subsequently filed a petition in Pulaski County Circuit Court seeking to have appellant adjudged delinquent on the grounds that he had committed the offense of terroristic

threatening in the first degree in violation of Ark. Code Ann. § 5-13-301 (Repl. 1997), a class D felony. After a hearing the circuit court found that he had committed the offense alleged and adjudicated him delinquent. He was placed on probation for nine months and ordered to perform forty hours of community service.

The only issue on appeal is whether the evidence is sufficient to support the court's verdict. We agree with the appellant that it is not and reverse.

■ While a delinquency adjudication is not a criminal conviction, it is based upon an allegation by the State that the juvenile has committed a certain crime. *Vanesch v. State*, 70 Ark. App. 277, 16 S.W.3d 306 (2000). The burden of proof in the trial court is beyond a reasonable doubt, and our standard of review is the same as it would be in a criminal case, i.e., whether the court's verdict is supported by substantial evidence. *McGill v. State*, 60 Ark. App. 246, 962 S.W.2d 382 (1998). Whether the trial court's decision is supported by substantial evidence is a question of law. *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997).

Two witnesses testified at the adjudication hearing, Ms. Cortney Meador and the school resource officer, James Yeilding. Officer Yeilding testified that he saw the "hit list" and that Anthony was a fairly new student at the school.

Ms. Meador testified that on the day in question the children were doing a vocabulary lesson. She would write vocabulary words on the blackboard, and the students would copy them into their notebooks. She testified that she walked around the room to assess that the children were doing their jobs. She testified that when she came to Anthony's desk:

> He was writing on a page and had flipped back to another page where he was writing a note to a female, which had a female's name on it. And I asked him if he had done any work and he said—just kind of looked at me and didn't really say anything.

The questioning then proceeded:

Q. And you believe that when he saw you coming that he flipped the page?

A. Yeah, yeah.

Q. Okay. So what did you do next?

A. I just—I said, "Let me see your notebook." And he said, you know, "I didn't do anything." And I said, "Okay, well, let me see your notebook."

Q. Okay. Now, is this a notebook that you would have taken up anyway at the end of the lesson to grade?

A. I always pick them up and look at them. Yeah, during—

Q. To grade the vocabulary?

A. Yeah. Just to look at them to make sure they are doing participation so I give them participation points for doing it.

Q. Okay. And what did you discover in his notebook?

A. The page that he had written on, maybe two words, something "Dear" whatever to a girl and the other page had a "Hit List, To Shoot List," on there.

Q. What exactly did it say?

A. It said—I believe it said "Hit List, To Shoot List," and it had several students listed from Poplar Street Middle School.

Q. Did you recognize some students' names?

A. I remember one in particular.

Then, on cross:

Q. Okay. You say you take these notebooks up, but do you look completely throughout these notebooks or you just generally check the pages that they got their vocabulary words on?

A. Generally, wherever they are writing that's where I look.

Q. So when he flipped back on the page that he was writing on at that point, that was the page that you looked—that is what you normally would be looking at?

A. Yeah. On the page —

Q. Okay.

A. —that he was writing on, yeah.

Q. Okay.

Finally, on redirect:

Q. Now, he was supposed to be doing the vocabulary—

A. Yeah.

Q. —though, right?

A. Uh-huh.

Q. And the front page that you saw, when you saw, clearly wasn't vocabulary?

A. Right.

Q. And so it's possible the next page was vocabulary?

A. Well, I was thinking he was doing something that was very attentive because the other one was full up with a lot of stuff on there so I thought maybe he actually is doing his vocab.

Q. Okay. And periodically do you take their whole folder—

A. Yes I sure do.

Q. —and review it for grades at the end of the semester and stuff?

A. Uh-huh, yes.

Q. Okay. Thank you.

The applicable statute, Ark. Code Ann. § 5-13-301 (Repl. 1997), provides in pertinent part:

(a)(1) A person commits the offense of terroristic threatening in the first degree if:

(A) With the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person;

(2) Terroristic threatening in the first degree is a Class D felony.

At trial appellant relied on *Knight v. State*, 25 Ark. App. 353, 758 S.W.2d 12 (1988), and the State relied on *Trammell v. State*, 70 Ark. App. 210, 16 S.W.3d 564 (2000). While *Trammell* bears some facial similarity to the case at bar, appellant is entirely correct that it has no application here because we held that Trammell had waived his argument as to the sufficiency of the evidence and therefore did not reach that issue.

We also agree with the appellant that *Knight* is controlling. While it is clear that the statute does not require that the threat be communicated directly to the person threatened, the gravamen of the offense is communication, not utterance. *Knight* at 356. We held in *Knight* that our statute does not impose criminal liability for threats made in reckless disregard of the risk of causing terror.

The question before us is whether the evidence in the case at bar will force or compel the mind to pass beyond speculation and conjecture to find that this appellant had the "purpose of terrorizing another." We conclude that the evidence is insufficient.

Reversed and dismissed.

ROBBINS and CRABTREE, JJ., agree.