
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-13-712

| | | |
|---|---|---|
| | | Opinion Delivered  MAY 14, 2014 |
| DAVID KEITH ADAMS | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. CR-12-3175] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE WENDELL GRIFFEN, JUDGE |
| | | AFFIRMED |

## KENNETH S. HIXSON, Judge

After a Pulaski County Circuit Court bench trial, appellant David Keith Adams was convicted of residential burglary, first-degree terroristic threatening, third-degree domestic battery, and first-degree interference with emergency communications. Adams was found to be subject to an enhancement due to his status as a habitual felon and was sentenced to concurrent prison terms totaling 180 months. Adams raises three arguments on appeal: (1) that there is insufficient evidence to support his conviction for terroristic threatening; (2) that there is insufficient evidence to support his conviction for interference with emergency communications; and (3) that the trial court did not have statutory authority to enhance his sentence, nor did it have sufficient evidence that the prior felony conviction was appellant's. We affirm.

SLIP OPINION

The method of challenging the sufficiency of the State's evidence to support a conviction in a bench trial is by a motion to dismiss in the manner prescribed by Arkansas Rule of Criminal Procedure 33.1(b) and (c). On appeal of a challenge to the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Barron-Gonzalez v. State*, 2013 Ark. App. 120, ___ S.W.3d ___. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id*. Any credibility determinations, and the resolution of any conflicts in the evidence, are for the finder of fact, not our court on appeal. *Purdie v. State*, 2010 Ark. App. 658, 379 S.W.3d 541.

Criminal intent can seldom be proved by direct evidence and must usually be inferred from the circumstances. *Hoodenpyle v. State*, 2013 Ark. App. 375, ___ S.W.3d ___. The finder of fact need not lay aside its common sense in evaluating the ordinary affairs of life and may consider and give weight to any false, improbable, or contradictory statements made by the defendant to explain suspicious circumstances when determining criminal knowledge and intent. *Id*. A person acts "purposefully" with respect to his conduct or a result of his conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2006). A person acts "knowingly" with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that

nature or that such circumstances exist, and a person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that the conduct will cause the result. Ark. Code Ann. § 5-2-202(2) (Repl. 2006).

These charges were filed in response to an incident at Karen Roark's home on West Dixon Road in Little Rock late in the afternoon on August 31, 2012. Karen and appellant were in a long-term romantic relationship that Karen said had come to an end about two weeks prior to this incident. Appellant's attorney characterized their relationship as tumultuous. In short, Karen testified that appellant broke into her home, physically assaulted her, took her cell phone away and destroyed it while she was on the phone with 911, and threatened that if she had summoned the police, he would kill her. Appellant does not argue on appeal that the evidence was insufficient to sustain his convictions for residential burglary and domestic battery. Appellant challenges the State's proof of his mens rea, or level of intent, with regard to terroristic threatening and interference with emergency communications.

Viewing the evidence and all inferences in the light most favorable to the State, the evidence establishes the following. On the day in question, appellant had called Karen 270 times and had sent 100 texts, the contents of which Karen described as "very obscene and vulgar." After her work day ended at a medical facility in Little Rock, Karen drove home, went inside, and locked her door. Shortly thereafter, appellant pulled into her driveway, blocked her car, and approached the door, banging on it and yelling at Karen to talk to him.

Karen told him, through the locked door, that she did not want to talk and asked him to leave, but he continued to yell at her through the door. Karen retreated to her bathroom

and locked herself in it, taking her cell phone with her. Moments later, she heard her back door "splintering" and appellant entering the house, coming toward the bathroom. Karen called 911 for help.

Appellant broke the bathroom door off the frame and hinges to get to her, grabbing and bruising her left arm, pushing her down the hallway, and ultimately taking her cell phone away and slamming it on the counter to break it. She said that the cell phone battery and smart card "flew away." She said that when she tried to escape by going outside, appellant grabbed her by the hair and ordered her back inside, pushing her down onto the door jamb, which "skinned" her hand.

Karen testified that during the incident, which lasted only a few minutes, appellant made threats and kept telling her to hang up while she was on the phone with 911. Karen specifically recalled appellant telling her more than once that "if that's the cops, I will kill you." She said he also told her that he "should have finished me off when he had the chance," referring to another domestic incident between them.

Law enforcement authorities took photographs of Karen and her home, which were admitted into evidence. The photographs substantiate bruising to her arm and a bloody scrape to her hand. The photographs of the damage to the home depicted the back door with splintering, warping, a broken chain-lock, and dislodged screws, as well as her bathroom door with a broken frame and hinges. Karen testified that she called 911 because she was "scared to death." She described appellant as "very upset," "yelling," and "just out of hand . . . with the things that he said and the harassment that I had been receiving."

SLIP OPINION

Appellant testified in his own defense, stating that he went to check on Karen's welfare because she had not returned his calls and that he did not think that they were broken up, although he had admittedly called her "a nasty whore" and other names in text messages. Appellant said he drove to her house from his home in Bauxite, Arkansas, expecting her to be home from work. He said he also went there to use her dumpster to dispose of a bag of his trash.

Appellant admittedly broke into the trailer but described the trailer's back door and bathroom door as flimsy. Appellant testified that Karen was the one who threw her cell phone down after she "got an attitude," that he never touched her or her cell phone that day, that he did not know she was on the phone with 911, and that he never threatened to kill her then or any other time. Appellant explained the bruise on her arm as having resulted from their recent consensual sexual encounter three to four days prior to this incident. In response to questioning, appellant estimated himself to be about eleven inches taller and 100 pounds heavier than Karen.

The trial judge found appellant guilty on all four criminal counts at the conclusion of the bench trial, noting that credibility of the witnesses was key to his decision. The trial judge found appellant's explanations unbelievable and inconsistent with the evidence presented by the State.

On the charge of terroristic threatening, appellant attacks Karen's credibility, contends that her testimony was inconsistent about when the alleged threats were made, and that even

if appellant did make a threat to kill Karen, "he did not say so in a way or at a time that would show he intended to fill her with intense fright." We disagree.

As charged in this case, the State bore the burden to prove that appellant acted with the purpose of terrorizing Karen and threatened to cause death or serious physical injury or substantial property damage to Karen. Ark. Code Ann. § 5-13-301(a)(1)(A) (Repl. 2013). The statute requires that the defendant intend to fill the victim with intense fright. *Knight v. State*, 25 Ark. App. 353, 758 S.W.2d 12 (1988). We note that a terroristic threat need not be explicit or verbal. *Johnson v. State*, 2013 Ark. App. 271. There is no requirement that the recipient of the threat actually be terrorized, although the record indicates that Karen obviously felt terrorized, nor must it be shown that the accused has the immediate ability to carry out the threat. *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 101 (2005). What is prohibited is the communication of a threat with the purpose of terrorizing another person. *Id.*

The State contends that appellant did not make this specific argument to the trial court, but that even if his argument is preserved, it lacks merit. We hold that even on the merits appellant is not persuasive, and we affirm his conviction for first–degree terroristic threatening.[1]

This case turned on the credibility of the witnesses. Any inconsistencies in Karen's testimony were for the trial court to resolve. Viewed most favorably to the State, the

---

[1]The motion for dismissal recited the entire statute, which includes the purposeful intent requirement, and then asserted that his purported threat was not sufficient to sustain a guilty verdict. The State responded that appellant's behavior, in context, showed his purposeful intent. The trial court denied the motion to dismiss.

evidence established that appellant broke into Karen's home, broke into the bathroom where she had retreated, physically assaulted her, took her cell phone away and broke it, and threatened more than once that if she had called the police, he would kill her. These comments were made in the midst of a domestic-battery situation. This was more than just angry banter. *See Cash v. State*, 2011 Ark. App. 493. These are circumstances from which the trier of fact could reasonably conclude that appellant acted with the purpose to terrorize Karen, and these were precisely the type of terroristic threats that the statute was designed to punish. *Compare Lasker v. State*, 2009 Ark. App. 591.

With regard to first-degree interference with emergency communications, Ark. Code Ann. § 5-60-124(a) (Supp. 2013) requires proof that the defendant "knowingly displaces, damages, or disables another person's telephone or other communication device with the purpose of defeating the other person's ability to request with good cause emergency assistance from a law enforcement agency, medical facility, or other government agency or entity that provides emergency assistance." This statute establishing this misdemeanor crime was enacted in the 2007 legislative session, Act 162. Appellant argues, as he did at the trial court level, that the evidence was insufficient to establish appellant's knowledge that Karen was attempting to contact emergency assistance, even if he did take her phone away and break it. We hold that the State's evidence was sufficient to support the reasonable inference that appellant acted knowingly with regard to interfering with Karen's call to 911. Karen's testimony and the circumstances of this domestic disturbance permit such a reasonable inference of appellant's knowledge and purpose.

7

Lastly, appellant challenges the trial court's authority to enhance his sentence, arguing that the relevant statute permits only a jury to do this, and furthermore, that the State failed to sufficiently identify appellant as the same person on the certified copy of the prior convictions. We affirm.

Appellant begins his argument by challenging the trial judge's authority to enhance his sentence at all, contending that Arkansas Code Annotated section 5-4-502 permits only a jury, not a trial judge, to do so. We disagree. Our supreme court addressed this concern in *State v. Freeman*, 312 Ark. 34, 846 S.W.2d 660 (1993). Appellant acknowledges that the supreme court holding is related to this issue, but he argues that it is not controlling. We disagree with him.

In *Freeman*, the defendant argued that Arkansas Code Annotated section 5-4-502 is inapplicable in bench trials because the habitual sentencing procedure therein refers only to a jury, and not the trial court in a bench trial. The supreme court held:

> Under [Freeman's] construction, he could possibly avoid the habitual sentence enhancement provisions merely by asking for a bench trial, but he would subject himself to such enhancement provisions if he demanded a trial by jury. No such Hobson's choice was intended by the General Assembly's passage of these statutory provisions.

*Id.* at 36, 846 S.W.2d at 661. We can discern no meaningful distinction, and we are bound by our supreme court's interpretation of this state's statutes.

Moving to the sufficiency of the evidence of the prior convictions, the State bears the burden to prove a defendant's prior convictions for purposes of the habitual-offender statute. *Williams v. State*, 304 Ark. 279, 801 S.W.2d 296 (1990). According to Arkansas Code

8

Annotated section 5-4-504 (Repl. 2006), proof of a previous felony conviction to establish habitual status "may be proved by any evidence that satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty," and one statutorily-approved method is presentation of a certified copy of the prior conviction. The test on appeal is whether there is substantial evidence that the defendant was convicted of the felonies in question. *Gipson v. State*, 2013 Ark. App. 651.

At the sentencing hearing, the State presented a certified copy of a 1985 felony conviction from the Pulaski County Circuit Court for David K. Adams, identified as a white male (the same race as appellant) with the same date of birth as appellant, October 31, 1962. Appellant contends that this did not suffice to establish that the prior conviction belonged to appellant, and not someone else. We hold that there is substantial evidence to support the trial judge's conclusion that this conviction was appellant's. *Compare Gipson*, *supra* (holding that full name "Otis Delotis Gipson" even without birth date was sufficient identifying information for purposes of establishing prior felony conviction). *See also Walters v. State*, 286 Ark. 166, 690 S.W.3d 122 (1985); *Leggins v. State*, 267 Ark. 293, 590 S.W.2d 22 (1979) (discussing requirement of similarity of name on prior conviction).

Affirmed.

GLADWIN, C.J., and GLOVER, J., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.