Cite as 2020 Ark. App. 114

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-19-646

| | | |
|---|---|---|
| COREY HUGHES | | **Opinion Delivered:** February 19, 2020 |
| | APPELLANT | |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-18-285] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

A Hot Spring County Circuit Court jury convicted Corey Hughes of terroristic threatening in the first degree. He was sentenced to six years in the Arkansas Department of Correction. On appeal, Hughes argues there was insufficient evidence to convict him of terroristic threatening in the first degree. We affirm Hughes's conviction and sentence.

Hughes was charged with terroristic threatening in the first degree and aggravated assault. The evidence adduced at trial established the following. On September 27, 2018, LaDarrion Price was in the break room of Acme Brick after just finishing a work shift. Hughes walked in and headed directly toward him.

Price testified that Hughes came in the room demanding to know why he had been fired. Hughes repeatedly screamed, "Is I'm hired or fired? Is I'm hired or fired?" Price responded by putting his hat on the table and standing up. Price testified that he was calm

and collected when he asked Hughes what was going on and that he walked up to Hughes while Hughes continued to shout: "You going to tell me. You going to tell me."

Another employee, Odis Young, was also in the break room and attempted to defuse the situation by telling Hughes that he was rehired. Young testified that while he was asking Hughes to leave the building, Hughes turned around and pointed a .22-caliber pistol at Price. Price testified that Hughes pointed the pistol at him several times, telling him that "he [Hughes] was fixing to shoot."

Hot Spring County sheriff's deputy Michael Morrow testified that he was on duty on September 27, 2018, when he was dispatched to Acme Brick to investigate a report of suspicious circumstances. Deputy Morrow testified that he learned from witnesses at the scene that Hughes had threatened a coworker with a pistol at the plant earlier that morning, but that Hughes was no longer at the scene. Deputy Morrow did not find Hughes at his residence when he went to look for him later that day. Deputy Morrow further testified that during his subsequent investigation, he received information that Hughes had left the country and flown to Belize.

After the State rested, Hughes moved for a directed verdict on both terroristic threatening in the first degree and aggravated assault. The circuit court denied his motion.

Hughes testified in his own defense at trial. He testified that on the morning of September 27, 2018, he arrived late for work at Acme Brick and that he went to the break room to speak with his supervisor, Reuben Hernandez, who "shook his head" and told him "it's over." Hughes testified that he then "got in a[n] altercation" with Price inside the break room after Price had become agitated when he [Hughes] loudly asked Price whether he

2

could be rehired. Hughes testified that he walked out into the hall after Young "got in front of [him]" and "broke" it up.

Hughes denied that he ever pointed a pistol at Price, explaining that the only item in his hand at the time was a keychain. Despite a prior argument with Price at a "local water[ing] hole[,]" Hughes testified that he "didn't have no gun," and if he "didn't pull no gun on [Price][,] then . . . [he] sure didn't pull down on him on no job." While on the stand, Hughes stated that a lighter on his keychain did look like a pistol and that "it must [have] look[ed] like a gun to [Price]." Hughes also testified that he "[t]ook off for Texarkana with [his] daughter" immediately after this incident.

At the conclusion of all the evidence, Hughes renewed his directed-verdict motion, and the court again denied it. The jury then found Hughes guilty of Class D felony terroristic threatening in the first degree but acquitted him of aggravated assault. He was sentenced to six years' imprisonment in the Arkansas Department of Correction. This timely appeal followed.

On appeal, Hughes argues the circuit court erred by denying his directed-verdict motions on terroristic threatening in the first degree. Specifically, Hughes argues that there was insufficient evidence to support the jury's findings that he acted purposely or communicated a threat to Price.

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Stockstill v. State*, 2017 Ark. App. 29, at 4, 511 S.W.3d 889, 893. When the sufficiency of the evidence is challenged, our court considers only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Id.*

3

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *E.g.*, *Adams v. State*, 2014 Ark. App. 308, at 2, 435 S.W.3d 520, 522. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion or conjecture. *Id.* Circumstantial evidence can be substantial if it excludes every other reasonable hypothesis other than the guilt of the accused. *Id.* "Whether such evidence does exclude every other such reasonable hypothesis is for the jury to decide." *Lowry v. State*, 364 Ark. 6, 20, 216 S.W.3d 101, 110 (2005). "On review, this court neither weighs the evidence nor evaluates the credibility of the witnesses." *Stockstill*, 2017 Ark. App. 29, at 4, 511 S.W.3d at 893.

Arkansas Code Annotated section 5–13–301(a)(1)(A) (Supp. 2019) provides the following: "[A] person commits the offense of terroristic threatening in the first degree if[,] [w]ith the purpose of terrorizing another person, the person threatens to cause death or serious physical injury . . . to another person[.]" Moreover, "a person acts purposely with respect to his . . . conduct or a result of his . . . conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result[.]" Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

Arkansas Code Annotated section 5-13-301(a)(1)(A) requires that the defendant intend to fill the victim with intense fright. *E.g.*, *Adams*, 2014 Ark. App. 308, at 6, 435 S.W.3d at 523. A defendant's intent at the time of the offense can seldom be established through direct evidence; rather, "it must usually be inferred from the circumstances surrounding the crime." *Armour v. State*, 2016 Ark. App. 612, at 3, 509 S.W.3d 668, 670.

4

A jury is allowed to use its common knowledge and experience to infer a defendant's intent from the circumstances, and it is presumed that persons intend the natural and probable consequences of their acts. *See, e.g.*, *Davis v. State*, 2012 Ark. App. 362, at 3, 4; *see also, e.g.*, *Armour*, 2016 Ark. App. 612, at 3, 4, 509 S.W.3d at 670. A jury also may consider a defendant's flight from the scene of the crime or from "one's usual haunts after a crime" as circumstantial evidence of guilt. *Kidd v. State*, 24 Ark. App. 55, 62, 748 S.W.2d 38, 41 (1988); *see also, e.g.*, *Hunt v. State*, 2015 Ark. App. 53, at 5, 454 S.W.3d 771, 775.

We note that a terroristic threat need not be explicit or verbal, and there is no requirement that its intended recipient actually be terrorized. *E.g.*, *Stockstill*, 2017 Ark. App. 29, at 4, 511 S.W.3d at 893. The statute also does not require that the terrorizing continue over a prolonged period of time or that the accused had the immediate ability to carry out the threat. *E.g.*, *Foshee v. State*, 2014 Ark. App. 315, at 3.

In this case, the jury was presented ample evidence to reasonably infer that Hughes purposely threatened Price. Multiple witnesses, including Price and Young, testified that Hughes had pointed a pistol at Price. Price further testified that as Hughes aimed, he told him that he was "fixing to shoot." This statement constituted a threat. *See Richards v. State*, 266 Ark. 733, 733, 585 S.W.2d 375, 377 (Ark. Ct. App. 1979) (holding that "[t]he threat to shoot another is a threat . . . as to constitute terroristic threatening" under prior statute using identical language).

Hughes argues that he never threatened Price; however, the jury was entitled to resolve any conflicting testimony, and it found Price's testimony more credible. *E.g.*, *Wright v. State*, 2016 Ark. App. 404, at 3, 4, 499 S.W.3d 683, 685, 686. Hughes also argues that it

is "unclear[,]" based on the evidence presented at his trial, that he acted with the requisite intent "to frighten Mr. Price[,]" but jurors were entitled to rely on their common knowledge and life experiences to infer that, given the circumstances, Hughes acted with the conscious objective to cause Price terror. *See, e.g., Davis*, 2012 Ark. App. 362, at 3, 4. The jury properly considered Deputy Morrow's testimony and Hughes's own testimony that he immediately left Acme Brick and, in fact, traveled to Texarkana after the incident as circumstantial evidence of his guilt. *Kidd*, 24 Ark. App. at 62, 748 S.W.2d at 41; *see, e.g., Hunt*, 2015 Ark. App. 53, at 5, 454 S.W.3d at 775. Given the circumstances established at his trial, it was reasonable for the jury to conclude that Hughes threatened Price in order to terrorize him.

Hughes also contends that he is entitled to reversal under the holdings in *Knight v. State*, 25 Ark. App. 353, 758 S.W.2d 12 (1988), and *Roberts v. State*, 78 Ark. App. 103, 78 S.W.3d 743 (2002), but those cases are clearly distinguishable. In *Knight*, our court held that evidence of a defendant's threat regarding a specific jailer, which might have been overheard on the jail's intercom, was insufficient to show he acted with the purpose of terrorizing that specific jailer. *Knight*, 25 Ark. App. at 357, 758 S.W.2d at 14. Here, in contrast, Hughes repeatedly threatened Price directly.

Hughes's reliance on *Roberts v. State*, is similarly misplaced. Our court's ruling in *Roberts* turned on the facts that a seven-year-old juvenile's adjudication was based solely on evidence that a teacher discovered a "hit list" of students inside a notebook that she requested from the juvenile. 78 Ark. App. at 105–08, 78 S.W.3d at 744–46. Here, Hughes's

6

threats were not encapsulated in the privacy of a schoolchild's notebook but communicated openly to Price in the workplace and observed by independent witnesses.

The State argues that the facts here are more analogous to those in *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). In that case, the Arkansas Supreme Court held that evidence that Smith pulled out a pistol and threatened to kill employees at his workplace after having been fired was sufficient to prove seven counts of terroristic threatening in the first degree. *Id.* at 453–56, 757 S.W.2d at 555–57. Similar facts are present here. As such, we hold there was sufficient evidence for a jury to find that Hughes committed terroristic threatening in the first degree. Accordingly, we affirm Hughes's conviction and sentence.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.