Cite as 2026 Ark. App. 63

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-25-86

| | | |
|---|---|---|
| BENJAMIN SHERMAN | | Opinion Delivered February 4, 2026 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-23-134] |
| V. | | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**CASEY R. TUCKER, Judge**

Appellant Benjamin Sherman appeals the Hot Spring County Circuit Court's December 21, 2023 jury verdict finding him guilty on three counts of terroristic threatening. The circuit court sentenced Sherman to a total of twelve years in the Arkansas Division of Correction. Sherman argues that the circuit court erred in denying his motions for directed verdict because the State's evidence was not sufficient to satisfy the elements of the offense. We affirm.

I. *Facts and Procedural History*

On June 7, 2023, Malvern Police Officers Justin Baker and Keshawn Bledsoe were dispatched to 78 Lockman Heights for a welfare check on a white male who appeared to be using drugs outside an apartment complex. The officers approached Tralesia Burrell—the person who had called the Malvern Police Department to make the report. Burrell directed

them to Sherman, who was sitting on a stump next to the apartment building. As Baker and Bledsoe approached Sherman, he threw something that sounded like glass when it hit a nearby fence. After searching, Bledsoe recovered a glass pipe.[1]

Extended video footage from Baker's body camera was played for the jury. The transcription from the video is as follows:

| | |
|---|---|
| OFFICER BLEDSOE: | That was him. He (unintelligible). I agree. There he is. Good morning. |
| OFFICER BAKER: | A crack pipe? |
| [SHERMAN]: | No. What the fuck do you want, fat ass? |
| OFFICER BAKER: | That a pipe? |
| [SHERMAN]: | Yeah. It was a fucking dope pipe. What the fuck about it? |
| OFFICER BAKER: | Go ahead and stand up. |
| [SHERMAN]: | Aw, shit. |
| OFFICER BAKER: | Let's stand up for me. Place your hands behind your back. |
| [SHERMAN]: | Aw, you fixing to grab me up like that, God? You going to grab me up like that, God? You going to grab me up like that, God? Any God damn way. God, I want my God damn (unintelligible). I could beat their mother fucking ass to death, God. Uh huh. You want to (unintelligible) for what? What's my God damn charge, mother fucker? |

---

[1]At the trial, the officers testified that they knew from their training that it was a pipe commonly used to smoke illicit drugs.

. . . .

[SHERMAN]: If you arrest me I'm going take your mother fucking life, mother fucker.

OFFICER BAKER: Whose life you going to take?

[SHERMAN]: I just told you, man.

OFFICER BAKER: Whose life you going to take?

[SHERMAN]: If you arrest me I'm going to mother fucking stab you to fucking death.

OFFICER BAKER: You're going to stab me to death? All right, that's another charge on you. How about that?

[SHERMAN]: You ain't got to be a God damn snitch. You could let me just God damn live out here. I'm having a hard ass fucking time.

OFFICER BAKER: (Inaudible) threatening me.

[SHERMAN]: You could be cool, Officer.

. . . .

[SHERMAN]: -- wrong. I'm going to kill your fucking black ass, whore, any God damn way.

OFFICER BAKER: That's another charge.

[SHERMAN]: Well, fuck, man, that's the God damn truth. What are you going to do, put me in the law, put me in the God damn jail again, God? God, you ain't nothing but a snitch, mother fucker. I can't stand your God damn ass.

OFFICER BAKER: When's the last time you used, my guy?

| | |
|---|---|
| [SHERMAN]: | Mother fucker, God is a snitch ass mother fucker. |
| OFFICER BAKER: | When's the last time you used? |
| [SHERMAN]: | I hit the dope pipe three times. |
| OFFICER BAKER: | When? |
| [SHERMAN]: | I ain't the God damn dope. It's God damn God. |
| OFFICER BAKER: | Right. But when? |
| [SHERMAN]: | God damn. |
| OFFICER BAKER: | When did you hit it? |
| [SHERMAN]: | Introduce yourself, God, to the God damn police. |
| OFFICER BAKER: | When did you hit the last. |
| [SHERMAN]: | Introduce your God I hit the pipe three God damn times just a God damn minute ago. |
| OFFICER BAKER: | Just a minute ago? |
| [SHERMAN]: | I didn't feel that shit though. That God damn dope was bumped. That dope was God damn bumped; any God damn ways. Yeah. You are possessed by God damn God is how you had that God damn strength. Any God damn way. God, you ain't nothing but a bitch mother fucker. Don't ever touch me like that again with this God damn fucking officer. Get your fucking hand off of me, mother fucker. |
| . . . . | |
| [SHERMAN]: | Mother fucker. You could let me God damn go. I'll be cool. I ain't done a God damn fucking thing wrong. |

4

OFFICER BAKER:          Oh, yeah?

OFFICER BLEDSOE:        Tossing a dope pipe was the first thing.

[SHERMAN]:             First thing?

OFFICER BAKER:          Then you threaten my life, my guy.

[SHERMAN]:             Well, fuck, man. I've been arrested so many you aren't even listening, man. You're a sorry ass mother fucker.

OFFICER BAKER:          I'm going to listen. Once you get in my car I'll listen to you.

[SHERMAN]:             Dad, fix my hand. I'm knocking his ass out when I go to fucking jail.

Officer Baker:          Okay.

[SHERMAN]:             I'm breaking his fucking jaw, because he fucking disrespected me. Mother fucker.

. . . .

[SHERMAN]:             (Inaudible) soda. Man, I've been in jail for four God damn years straight. And you called the law again. Mother fucker, you ain't nothing but a snitch, God. Mother fucker. I want my God damn hand fixed. I'm breaking this God damn mother fucker's jaw. Mother fucker. I want my God damn hands fixed.

. . . .

[SHERMAN]:             No. Listen, mother fucker.

OFFICER BLEDSOE:        Okay.

[SHERMAN]:             I'm intertwined with God.

OFFICER BLEDSOE:        Okay.

5

| | |
|---|---|
| [SHERMAN]: | God is real. You're a rude ass bitch, mother fucker. I'm going to take your family's life, bitch. That's how I feel about your God damn fat ass and your family and his ass to, mother fucker.[2] |

After the recording was stopped, Baker continued his testimony on direct. He testified that the video continued after the point it was stopped for the jury and that Sherman's demeanor did not change. He testified that at the point where the State stopped the video, Sherman had already threatened his life, Burrell's life, and Bledsoe and his family and that there was nothing else in the video relevant to the charges in this case.

On cross-examination, Baker testified that he had been a police officer going on eight years and that people are often loud and mouthy with him. He acknowledged that some people get arrested for being loud and mouthy. Baker acknowledged that Sherman had been cooperative getting into the police car, and he turned around and put his hands behind his back.

On redirect, the following exchange occurred between the State and Baker:

| | |
|---|---|
| [STATE]: | Okay. And so [Sherman's counsel] asked you if people were loud and mouthy with you. |
| OFFICER BAKER: | Yes. |
| [STATE]: | Are they? |
| OFFICER BAKER: | They are. |

---

[2]The State stopped showing the video and recording to the jury at this point.

| | |
|---|---|
| [STATE]: | Do you encounter people who appear to be under the influence of some substance often? |
| OFFICER BAKER: | I do. |
| [STATE]: | Okay. Do all of them threaten you? |
| OFFICER BAKER: | A lot of them do. |
| [STATE]: | Do all of them continue to make such specific threats to you and everybody standing around them? |
| OFFICER BAKER: | No. |
| [STATE]: | And do those people that do do you take them into custody and charge them with terroristic threatening? |
| OFFICER BAKER: | Charge. Yes. |
| [STATE]: | Is that what you did here? |
| OFFICER BAKER: | That's what I did. |

After Baker completed his testimony, Bledsoe testified that he had previously worked as a patrolman for the Rockport Police Department for two months. He stated that he had been in law enforcement for four and a half years and that he was employed by the Malvern Police Department on June 7, 2024—the date of Sherman's arrest. He stated that while on patrol on June 7, he and Baker were dispatched to Lockman Heights for a welfare check. He and Baker saw Sherman throw something that sounded like glass, which ended up being a dope pipe. Bledsoe testified that while they took Sherman to the car, Sherman made some threatening remarks, behaved erratically, and appeared to be under the influence of something. Bledsoe testified specifically during the direct examination by the State:

7

| | |
|---|---|
| [STATE]: | Was he specific, however, in his threats? |
| OFFICER BLEDSOE: | Absolutely. |
| [STATE]: | Did you hear him threaten Officer Baker? |
| OFFICER BLEDSOE: | Yes, ma'am. |
| [STATE]: | Did you hear him threaten Ms. Burrell? |
| OFFICER BLEDSOE: | Yes, ma'am. |
| [STATE]: | And did he personally threaten you? |
| OFFICER BLEDSOE: | Yes, ma'am. |
| [STATE]: | Do you recall what he told you? |
| OFFICER BLEDSOE: | He said -- excuse my language. He -- |
| [STATE]: | We've heard the body camera for your information, so the language has been heard already. |
| OFFICER BLEDSOE: | Okay. So he said "F" me and my family and he would kill my family. Or something along those lines. |
| [STATE]: | You've been an officer you said for about four years. Is that right? |
| OFFICER BLEDSOE: | Yes, ma'am. |
| [STATE]: | So this is not the first person with substance abuse issues or with impairment that you've dealt with. Is that correct? |
| OFFICER BLEDSOE: | No, ma'am. No, ma'am. |
| [STATE]: | Are people in that state often loud and mouthy? |

| OFFICER BLEDSOE: | Yes, ma'am. |
| --- | --- |
| [STATE]: | Do they all make threats to you? |
| OFFICER BLEDSOE: | No, ma'am. Not all of them. |
| [STATE]: | And were, again, were Mr. Payne's threats very specific? |
| OFFICER BLEDSOE: | Yes, ma'am. |
| [STATE]: | Any doubt who he was talking to? |
| OFFICER BLEDSOE: | No doubt. |

On cross-examination, Bledsoe acknowledged that Sherman did not resist arrest.

At the close of the State's case, Sherman moved for directed verdict, arguing that Sherman's actions did not rise to the level of terroristic threatening because the comments were not made with the purpose of terrorizing, which is a required element to prove terroristic threatening. The circuit court denied the motion, ruling that it presented a question of fact for the jury to determine and that the jury instructions would define what actions constitute purposeful conduct.

Sherman rested without calling any witnesses and renewed his directed-verdict motion, which the circuit court again denied. The jury found Sherman guilty of all three counts of terroristic threatening and recommended six-year sentences on each count. The circuit court ordered counts one and two to be served consecutively, and concurrently to count three, for an aggregate sentence of twelve years in prison. This appeal followed.

II. *Standard of Review*

9

An appeal from the denial of a motion for directed verdict is an appeal challenging the sufficiency of the evidence. When reviewing sufficiency claims, this court views the evidence in the light most favorable to the State, only considers evidence supporting the verdict, and will affirm a conviction if there is substantial evidence, either direct or circumstantial, to support it. *Martin v. State*, 2019 Ark. App. 19, at 3–4, 567 S.W.3d 558, 560. Substantial evidence is evidence forceful enough to compel a conclusion beyond speculation and conjecture. *Id.* at 3, 567 S.W.3d at 560.

III. *Analysis*

Sherman argues that the circuit court should have granted his motion for directed verdict on the charges of terroristic threatening as defined in Arkansas Code Annotated section 5-13-301(a)(1) (Repl. 2024), which states: "A person commits first-degree terroristic threatening if: (A) With the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person."

The statute defining terroristic threatening requires that the defendant intends to fill the victim with intense fear. *Adams v. State*, 2014 Ark. App. 308, at 6, 435 S.W.3d 520, 523. A terroristic threat need not be explicit or verbal, and there is no requirement that the recipient of the threat actually be terrorized. *Smith v. State*, 296 Ark. 451, 455, 757 S.W.2d 554, 556 (1988). The prohibited conduct is "the communication of [a] threat with the purpose of terrorizing another." *Id.*

With respect to the first element, the test to determine whether a defendant communicated a true threat is whether a reasonable person would have understood the

10

statement as a threat. *Minor Child v. State*, 2025 Ark. App. 76, 705 S.W.3d 904. Here, Sherman made numerous statements to both officers that he would either stab or kill them or their families. Also, while the police were escorting him to the car, he saw Burrell and stated he would kill her as well. The officers' testimony was corroborated by video footage played for the jury. Substantial evidence supports the finding that Sherman communicated statements threatening to cause serious physical injury to the policemen and Burrell.

Sherman argues that there was not sufficient evidence that he made the threats with the purpose of terrorizing. Specifically, Sherman argues that *Roberts v. State*, 78 Ark. App. 103, 78 S.W.3d 743 (2002), and *Knight v. State*, 25 Ark. App. 353, 758 S.W.2d 12 (1988), require reversal because Sherman did not make the threats with the purpose of terrorizing the police officers or Burrell. In *Roberts*, the circuit court's finding of terroristic threatening was reversed and dismissed because the terroristic threat had been written in a notebook, and there was no evidence that the defendant had the purpose of terrorizing another. 78 Ark. App. at 108, 78 S.W.3d at 746. In *Knight*, this court reversed and dismissed the conviction because the threat was heard over a jail intercom, and there was no proof that Knight was aware that he might have been overheard when he made the alleged threat. 25 Ark. App. at 356–57, 758 S.W.2d at 14.

This case is markedly different. Sherman was approached by police officers responding to a call for a welfare check. The officers found Sherman loitering around an apartment building, acting erratically, and using drugs. Upon contacting Sherman and determining he was under the influence of drugs and had thrown out a "dope pipe," they

11

started to arrest him. Sherman responded by threatening numerous times to kill Officers Baker and Bledsoe. Sherman also threatened Burrell during the arrest. Both Baker's and Bledsoe's testimony described the threats made by Sherman and was corroborated by Baker's bodycam footage that was played for the jury.

Criminal intent can seldom be proved by direct evidence and must usually be inferred from the circumstances. *Adams*, 2014 Ark. App. 308, at 2, 435 S.W.3d at 522. A person acts purposely with respect to his or her conduct when it is "the person's conscious object to engage in conduct of that nature or to cause the result." Ark. Code Ann. § 5-2-202(1) (Repl. 2024). Whether Sherman's threats were made with the purpose of terrorizing Baker, Bledsoe, or Burrell was a question of fact for the jury. The jury determined that Sherman's threats were made with the purpose of terrorizing the officers and Burrell. Viewing Sherman's specific threats to kill both the officers and Burrell in the light most favorable to the State, the evidence was sufficient to establish that Sherman communicated threats to cause death or serious physical injury for the purpose of terrorizing others.

Affirmed.

HARRISON and THYER, JJ., agree.

*Gregory Crain*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.