Justin ANDERSON  *v.*  STATE of Arkansas

CR 06-29                                               242 S.W.3d 229

Supreme Court of Arkansas
Opinion delivered November 2, 2006

[Rehearing denied December 7, 2006.*]

---

\* CORBIN and IMBER, JJ., would grant rehearing.

*Janice Vaughn*, Arkansas Public Defender Commission, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Justin Anderson appeals his sentence of death by lethal injection. He was convicted of capital murder on January 31, 2002, and sentenced to death. He appealed his conviction and sentence to this court. The conviction was affirmed;

however, the sentence of death was reversed and remanded. *See Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). Anderson now appeals his sentence of death entered on remand, alleging that the circuit court erred in allowing the deliberating jury to replay the tape recording of his recorded statement in the jury room outside the presence of the court, counsel, and Anderson. He also alleges error in the circuit court's denial of his motion to exclude victim-impact evidence. We find no error and affirm.

## Facts

The sentencing hearing upon remand was moved from Lafayette County to Miller County pursuant to a motion to change venue. All of the events in this case took place in Lewisville, Lafayette County. According to Anderson's statement, he was depressed and despondent and decided that he would steal a firearm, kill someone, and then force police to kill him.

On October 2, 2000, Anderson broke the back window of a home in Lewisville and entered it in search of firearms. He located and removed two pistols. He then searched for people to kill but first found the opportunity on October 6, 2000, when he entered the cab of Roger Solvey's tractor-trailer at a convenience store. According to Anderson, he found Solvey in the sleeper and fired multiple shots. Solvey was wounded but recovered. On October 12, 2000, Anderson was walking in Lewisville when he saw eighty-five-year-old Clara Creech working in her garden. Anderson told police that he did not know her, that he just shot her. Anderson was picked up as a suspect that same day and after several hours of questioning, and meeting with his brother, he confessed.

## Taped Statement

Anderson argues that the circuit court erred in sending his recorded statement to the deliberating jury. The audiotape of Anderson's statement had been admitted into evidence and was played for the jury during the trial. He alleges that any playing of the tape by the jury during deliberations violated Ark. Code Ann. § 16-89-125(e) (1987) and his right to be present with counsel. The record does not show whether the tape was ever played by the jury. The tape was not directly requested by the jury. During deliberations, the jury requested the October 23, 1986, psychological report on Anderson's mother, Ruby Eason. Consistent with the circuit court's practice, all exhibits including the tape and a tape player were sent into the jury.

*Arkansas Code Annotated Section 16-89-125:*
*Deliberation of the Jury*

Arkansas Code Annotated section 16-89-125 (1987) discusses jury deliberation and is the current codification of statutes concerning conduct of a jury trial that were enacted in the Criminal Code of 1869.[1] Arkansas Code Annotated section 16-89-125(d)(3) (1987) and section 16-89-125(e) are relevant to our discussion. Arkansas Code Annotated section 16-89-125(d)(3) was originally codified as Section 247 of the Criminal Code of 1869.[2] This section provides that, "[u]pon retiring for deliberation, the jury may take with them all papers which have been received as evidence in the cause."

What is at issue is a taped statement that was played at trial and admitted into evidence. It was one of the exhibits sent to the jury when it requested the Eason document. What the jury asked for was a paper exhibit. Under section 16-89-125(d)(3), the Eason document, being a paper document, was certainly properly made available to the jury by the circuit court. The tape was not a paper document. Although the statute uses the term "papers," the cases interpreting section 16-89-125(d)(3) do not limit exhibits that may be given to the jury during deliberations to papers. In *Goff v. State*, 341 Ark. 567, 19 S.W.3d 579 (2000), we held that it was within the circuit court's discretion under Ark. Code Ann. § 16-89-125(d)(3), to allow all exhibits, including a hammer, to be given to the jury during deliberations. Arkansas Code Annotated section 16-89-125(d)(3) does not prohibit the jury from receiving and considering all exhibits, including the tape of Anderson's statement during deliberations.

However, Anderson argues that allowing the jury access to the tape during deliberations was a violation of Ark. Code Ann. § 16-89-125(e). This was enacted as Section 248 of the Criminal Code of 1869 and is identical to Ark. Code Ann. § 16-89-125(e), which provides:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they have a desire

---

[1] Title VI, Chapter 6, art. 5, of the 1869 Criminal Code discusses "Conduct of the Jury Trial." Code of Practice in Civil and Criminal Cases, at 307 (John G. Price Printer 1869).

[2] Code of Practice in Civil and Criminal Cases, § 247, at 312 (John G. Price Printer 1869).

to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

Anderson alleges that under the analysis in *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993), Ark. Code Ann. § 16-89-125(e) prohibits sending the tape into the jury deliberations. In *Davlin*, the jury asked during deliberations to view the videotaped statement of the victim.

The facts of *Davlin* distinguish it from the present case. In discussing the statute now codified as Ark. Code Ann. § 16-89-125(e), this court said:

> The design of the lawmakers in the enactment of this statute was to protect defendants on trial as well as the State, after causes have been finally submitted to the jury for its deliberation and verdict, against any further steps being taken in the case in regard to the evidence or the law unless in open court and after notice to the counsel of the respective parties.

*Aydelotte v. State*, 177 Ark. 595, 603-04, 281 S.W. 369, 372 (1926); *see also Golf v. State*, 261 Ark. 885, 552 S.W.2d 236 (1977); *Boone v. State*, 230 Ark. 821, 327 S.W.2d 87 (1959). The court has more recently stated that the purpose of Ark. Code Ann. § 16-89-125(e) is to protect against misinformation communicated to the jury. *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994). Thus, the purpose of section 16-89-125(e) is to protect against any further steps being taken with respect to evidence unless done in open court with counsel present. No further step was taken with respect to the evidence against Anderson in this case.

The jury was given the tape they had already heard to replay if they chose to do so. In *Davlin*, the videotape had portions that were not played at trial:

> The record states that the videotape would be replayed in the jury room just as it was at trial, with certain prejudicial portions deleted. However, the record is silent with respect to what actually occurred in the jury room and therefore does not assure us there was a lack of prejudice in the replaying of the tape.

*Davlin*, 313 Ark. at 221, 853 S.W.2d at 884. Thus, while the proposal was to replay the tape just as it had been played at trial, the record did

not show that it was so replayed.[3] In other words, if excluded portions of the videotape were played to the jury, a further step was taken in respect to the evidence in violation of the statute. Strict compliance with Ark. Code Ann. § 16-89-125(e) is required. *McKinney v. State*, 303 Ark. 257, 797 S.W.2d 415 (1990); *Rollie v. State*, 236 Ark. 853, 370 S.W.2d 188 (1963). Where there is a violation, prejudice is presumed, and it is up to the State to disprove that prejudice. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Williams v. State*, 264 Ark. 77, 568 S.W.2d 30 (1978). Where it cannot be shown what happened, prejudice is presumed. *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986).

In *Davlin*, giving the requested videotape to the jury created the possibility that evidence that was never introduced at trial might be introduced in the jury room. In that case, prejudice had to be presumed because it was impossible to glean from the record whether the prejudicial portions of the tape were deleted as they had been at trial. In the present case, there was no such danger.[4] We hold that there was no violation of Ark. Code Ann. § 16-89-125(e) in this case because the jury received an admitted exhibit where there was no danger of additional evidence being introduced by giving the exhibit to the jury during deliberations.

---

[3] We additionally note that in *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993), the trial judge and counsel were present in the jury room and Davlin was not present when the tape was played which is also contrary to Ark. Code Ann. § 16-89-125(e) (1987). This further distinguishes the *Davlin* case from the present case.

[4] The dissent distinguishes between evidence that is taken into deliberations when the jury retires and evidence that the jury later requests. It appears that the dissent believes that if evidence is taken into the jury room by the jury as it retires, then any review of that evidence by the jury does not constitute "representation of evidence" under Ark. Code Ann. § 16-89-125 (1987). Conversely, it appears under the dissent's analysis, that evidence later requested by and given to the jury constitutes "representation of evidence" requiring compliance with Ark. Code Ann. § 16-89-125(e) (1987). The dissent misses the point. In *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993), the court used the term "representation of evidence"; however, in *Davlin*, the videotape had evidence on it that had not been presented to the jury during trial. Thus, it contained additional evidence, and if that additional evidence was presented to the jury, it constituted the presentation or taking of new evidence, a substantial step and critical stage under constitutional analysis. This required the presence of counsel and the defendant under constitutional analysis and the presence of or notice to counsel under Ark. Code Ann. § 16-89-125.

## Critical Stage

Anderson also alleges that if the jury replayed the tape, it constituted a substantial step, or in other words a critical stage in the criminal proceeding against him requiring that he be present with counsel. It is a basic principle of both our state's and our nation's constitutional law that a criminal defendant has the right to be present in person and by counsel at any critical stage in his or her case. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Davlin, supra*. A criminal defendant has a Sixth Amendment right to an attorney at every critical stage of the proceedings. *Hammett v. Texas*, 448 U.S. 725 (1980). A criminal defendant has a due process right to be present at critical stages of the proceeding. *Kentucky v. Stincer*, 482 U.S. 730 (1987). The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

A critical stage in a criminal proceeding is every stage where substantial rights of the criminal defendant may be affected. *Rhay v. Washington*, 389 U.S. 128 (1967). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 574 Pa. 5, 13, 828 A.2d 1009, 1014 (2003).

The dissent argues that *Davlin, supra,* stands for the proposition that any "representation of evidence" constitutes a substantial step or critical stage in the proceedings and must be undertaken in the presence of counsel and the defendant. That interpretation is not consistent with *Davlin* or the law. *Davlin* stands for the proposition that the taking of evidence, or in other words the presentation of evidence to the jury for the first time, constitutes a substantial step and requires the presence of counsel and the defendant. In *Davlin*, portions of the videotape had been deleted when presented at trial, and the record did not reveal whether the deleted portions were reviewed by the jury in the jury room. If the deleted portions were reviewed by the jury, that would constitute the presentation of new evidence. There is no allegation of additional or new evidence being on the tape in the present case.

■ Anderson objected to submitting the tapes to the jury during deliberations. He argued that it had to be done in open court with him present and represented by counsel. The circuit

court refused and allowed the tapes to go to the jury along with all the exhibits admitted into evidence. If replaying the tapes had constituted the presentation of new evidence, Anderson's position would be correct because presentation of new evidence is a critical stage. *Perry v. Leeke*, 488 U.S. 272 (1989). However, there is nothing in the record to show that the jury would have been exposed to anything other than what was already played at trial. Anderson was present with counsel when the tapes were played at trial and had the opportunity to object and be heard at that time. He does not argue on appeal that the circuit court erred in denying his motion to exclude the tapes. There is nothing about replaying the tapes that would have been any more incriminating to Anderson than the incrimination that may have arisen from playing the tapes at trial. Nor was this a step in the proceedings that was critical to the outcome where his presence would have contributed to the fairness of the procedure. *Stincer, supra*. The jury was simply given exhibits already admitted into evidence. We hold that the jury's replaying during deliberations audiotapes of an out-of-court statement admitted into evidence and made an exhibit at trial is not a critical stage in criminal proceedings. There was nothing in this case to indicate that Anderson would suffer any new prejudice by the jury's replaying the tapes.

### Victim-Impact Evidence

Anderson raises six issues in arguing that the circuit court erred in admitting victim-impact evidence. First, Anderson argues that the jury considered and applied the victim- impact evidence as an aggravator in violation of Ark. Code Ann. § 5-4-604 (Repl. 1997). In *Johnson v. State*, 356 Ark. 534, 157 S.W.3d 151 (2004), and in *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998), this court specifically rejected the notion that victim-impact evidence acts as an aggravating circumstance or that it violates the statutory weighing process set out in the capital murder statutes.

However, Anderson makes an argument that the jury was confused and believed that the victim-impact evidence offered constituted an aggravating factor. Pursuant to Ark. Code Ann. § 5-4-604, "[a]n aggravating circumstance is limited to" those set out in the statute. After retiring to deliberate, the jury foreperson presented to the court the following issue and question: "Your Honor, we need a clarification on form three, item B, where we need a clarification for the aggravating circumstances. What do we

consider, the Roger Solvey circumstance, the Clara Creech circumstance, or both of them?'' The circuit court called a bench conference where the following was discussed:

> THE COURT: As stated, he's wanting to know what to count as B, aggravating circumstance. Am I correct?
>
> . . .
>
> MR. MARCZUK:[5] I think the confusion is because the form has an "s" so they're thinking there's more than one aggravating circumstance.
>
> THE COURT: I thought I eliminated that.[6]
>
> MR. MARCZUK: On some you did.
>
> MR. HALTOM: Is form 1008 what we need?[7]
>
> THE COURT: It's a threshold question as to whether we can tell them anything.
>
> MR. MARCZUK: I think the answer is Roger Solvey is the aggravating circumstance. That's what they're supposed to consider.

Counsel for Anderson responded that the jury should be told that there is only one aggravating circumstance. The State responded that because the jury was on form 3(b), they had already decided on the one aggravator; therefore, when the deliberations reach form 3(b) the jury is to weigh all the circumstances of the case. The State also argued that to tell the jury to only consider the aggravating circumstance of

---

[5] Mr. Marczuk represented Anderson at trial, and Mr. Haltom represented the State.

[6] Anderson notes that he objected to the word "circumstances" before the jury was instructed, and the court indicated that the singular form of the word would be used. The court instructed the jury that, "the only aggravating circumstance, in this case there's only one, the only aggravating circumstances that you may consider." However, the instructions as read included phrases such as "one or more of the listed aggravating circumstances," and "one or more aggravating circumstance."

[7] Arkansas Model Criminal Instruction 1008 includes phrases such as "any particular aggravating circumstance."

the attack on Solvey would nullify victim-impact evidence. The circuit court agreed that after the jury has already found on form 1 that the aggravating circumstance exists, they "should be allowed to consider all of the admitted, properly admitted evidence, or else it shouldn't have been admitted in the first place." The State characterized the jury's question as whether in doing the weighing of circumstances for form 3, they may consider both the shooting of Solvey and the murder of Clara Creech. The court then addressed the jury: "You are instructed then, that you may consider all of the evidence and give it whatever weight that you believe appropriate in answering form 3(b), and following."

In *Payne v. Tennessee*, 501 U.S. 808 (1991), the United States Supreme Court announced that admission of victim-impact evidence does not offend the federal constitution, and that it is relevant to assist the jury in imposing punishment based on a measurement of the injury to society. When the jury posed the question, it was working on form 3 and asking whether it could consider all the evidence in deciding punishment. The victim-impact evidence was relevant, admissible, and properly submitted to the jury to be weighed against evidence regarding punishment. There is no merit to the argument that victim-impact evidence served as an aggravator.

Second, Anderson argues that even if victim-impact evidence is generally admissible on the issue of punishment, it was improperly admitted in this case where it had no tendency in fact to prove or disprove the aggravating and mitigating circumstances at issue. He alleges that to be relevant, the evidence had to make it more or less likely that he shot Solvey or that the mitigators presented were proven. As already noted, victim-impact evidence is admissible and relevant to the question of the punishment to be imposed as a consequence of the injury caused by the crime. *Payne, supra.*

Third, Anderson argues that Ark. Code Ann. § 5-4-602(4) conflicts with Ark. Code Ann. § 5-4-603 (Repl. 1997), Ark. Code Ann. § 5-4-604 (Repl. 1997), Ark. Code Ann. § 5-4-605 (Repl. 1997), and the Arkansas Rules of Evidence. Anderson argues more specifically that only aggravating and mitigating circumstances may be considered under these statutes and the evidence code. We disagree. Victim-impact evidence is separately relevant to punishment. *McGehee v. State*, 348 Ark. 395, 72 S.W.3d 867 (2002).

▮ Fourth, Anderson argues that Ark. Code Ann. § 5-4-602(4) invades the judicial prerogative to determine relevance by legislatively deciding what evidence is relevant. Anderson misconstrues the statute. Act 1089 of 1993, which amended Ark. Code Ann. § 5-4-602 to include victim-impact evidence as admissible on the issue of punishment for capital murder, declared that victim impact evidence could be considered. This is consistent with *Payne, supra.* The statute does not declare what victim-impact evidence is relevant in any given case. That is an issue decided by the court.

Fifth, Anderson argues that Ark. Code Ann. § 5-4-602(4) violates the Fifth, Sixth, Eighth, and Fourteenth Amendments and Article II of the Arkansas Constitution. Anderson fails to develop this argument. This precludes us from considering the issue. *Ashley v. State*, 358 Ark. 414, 191 S.W.3d 520 (2004).

Sixth, Anderson argues that Ark. Code Ann. § 5-4-602(4) is void for vagueness. This argument has already been specifically rejected. *McGehee, supra.*

### *Rule 4-3(h)*

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), Ark. R. App. P. – Crim. 10(b), and Ark. Code Ann. § 16-91-113 (Repl. 2006). None has been found.

Affirmed.

CORBIN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. In order to affirm the circuit court, the majority misconstrues *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993), and effectively overrules the *Davlin* decision *sub silentio.* Two fundamental principles were pivotal in *Davlin*: (1) the State's inability to rebut the presumption of prejudice when there is no record of the communications with the jury after it retires for deliberation, and (2) the defendant's constitutional right to be present during the representation of evidence, which extends beyond the procedural rights promulgated by the Arkansas General Assembly in Ark. Code Ann. § 16-89-125(e) (1987).

When a jury retires to deliberate, "the jury may take with them all papers which have been" admitted into evidence. Ark. Code Ann. § 16-89-125(d)(3) (1987). The General Assembly,

however, has established a specific procedure governing how a jury may obtain any part of the evidence *after* the jury has retired to deliberate:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

Ark. Code Ann. § 16-89-125(e). This court has consistently required strict compliance with the procedure imposed by the legislature. *Davlin v. State, supra*; *McKinney v. State*, 303 Ark. 257, 797 S.W.2d 415 (1990). Furthermore, if the trial court does not strictly comply with the statute, we presume prejudice occurred. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002); *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *McKinney v. State, supra*. The State then has the burden to show that no prejudice occurred. *Goff v. State, supra*.

The facts in the *Davlin* case are strikingly similar to those presented in the instant case. A videotaped statement was played to the jury during the trial and again during jury deliberations. *Davlin v. State, supra*. Although section 16-89-125(e) mandates that the jury return to the courtroom and that the information be given to the jury in open court, "the videotape was not replayed in court, but in the room where the jury was deliberating." *Davlin v. State*, 313 Ark. at 221, 853 S.W.2d at 884. Finally, no record was made of what actually occurred during the replaying of the tape, and the defendant was not present. *Id.*

Due to the circuit court's failure to strictly comply with the requirements of section 16-89-125(e), we had to presume prejudice in *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882. Moreover, the State failed to meet its burden of rebutting the presumption of prejudice. *Id.*

The *Davlin* court also held that the errors can go beyond the procedural requirements of section 16-89-125(e), and encompass the defendant's constitutional right to be present when a substantial step is taken in his case. *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882. In so holding, we stated that "[a]lthough section 16-89-125(e) does not expressly require a defendant's presence during *the representation of evidence* or instruction of law, the fore-

going principles of law do so require." *Davlin v. State*, 313 Ark. at 223, 853 S.W.2d at 885 (emphasis added). Thus, it was the defendant's personal absence during the representation of evidence that violated his constitutional right to be present during a substantial step in the proceedings.

In the present case, the majority fails to address, much less acknowledge, the core holding in *Davlin* — the "representation of evidence" is a substantial step in the proceedings that mandates the presence of the defendant. Instead, the majority focuses on whether the tape has been admitted into evidence and conflates the admission of evidence with the representation of evidence.[1] The *Davlin* court clearly concluded that the replaying of a videotaped statement, which had already been admitted into evidence, was the *representation* of evidence to the jury.

The fundamental errors that mandated reversal in *Davlin* are also present in this case. First, the circuit court allowed the jury to take the audio tapes and a tape recorder into the jury room where the jury was deliberating, thereby making it possible for them to replay the taped statements in the jury room. As this court stated in *Davlin v. State, supra,* the replaying of taped statements amounts to "the representation of evidence." The representation of evidence in the jury room clearly violated section 16-89-125(e), resulting in a presumption of prejudice that the State could not rebut because there is no record of what happened in the jury room.

More importantly, the representation of evidence violated Anderson's constitutional right to be present during a substantial step in his case. In focusing exclusively on whether the tapes were admitted into evidence, the majority completely ignores our holding in *Davlin* that it is the circuit court's duty to bring the jury into the courtroom for the representation of evidence in the presence of the defendant. Once again, "had the jury returned to the courtroom, there would most likely have been a record of what occurred and the trial court would most likely have been reminded

---

[1] For example, despite the absence of any reference to the phrase "presentation of new evidence" in *Davlin*, the majority states that it is the "presentation of new evidence," and not the "representation of evidence," that constitutes a substantial step in the proceedings. In fact, the "representation of evidence," as that phrase was used in *Davlin*, "is the reviewing of the videotape" or "the replaying of the tape" previously admitted into evidence. 313 Ark. at 220, 853 S.W.2d at 884.

of appellant's right to be present." *Davlin v. State*, 313 Ark. at 223, 853 S.W.2d at 885.

As to the majority's valiant attempt to put some distance between *Davlin* and the present case, the majority opinion offers distinctions without a difference. For example, the majority suggests that the replaying of the audio tapes did not constitute a substantial step in the criminal proceedings because "there is nothing in the record to show that the jury would have been exposed to anything other than what was already played at trial." However, this reasoning runs counter to the circuit court's judgment when it directed the jury to convene in open court to hear the testimony of Anderson's brother, Maurice, replayed in the presence of Anderson and counsel for both sides. The jury had already heard that witness's testimony once, so there was nothing "the jury would have been exposed to" other than what had already been heard during the trial. Thus, under the majority's rationale, the representation of Maurice's testimony would not have been a substantial step in Anderson's case because the jury was not being exposed to anything new. Yet, the circuit court and the State have acknowledged that the replaying of Maurice's testimony amounted to a substantial step requiring Anderson's presence. Indeed, during oral argument, the State reiterated that "if the jury needs to rehear evidence, that is critical, just as it is in the courtroom." Thus, just as "the *rereading* of instructions to the jury constitutes a substantial step in the defendant's case," so does the *rehearing* or *representation* of evidence constitute a substantial step in a defendant's case. *Davlin v. State*, 313 Ark. at 222, 853 S.W.2d at 885 (emphasis added).

In short, the only appreciable difference between the replaying of Maurice's testimony, and giving the jury an opportunity to replay the audio tapes of Anderson's confession in the jury room, is the person who is doing the talking. That distinction rests on the majority's assertion that when the *defendant's* testimony is being replayed, it is not a substantial step in the proceedings. Such an assertion is without merit as the origin of the testimony that is being *represented* is irrelevant when determining whether a substantial step is being taken in the case. In fact, under our case law and section 16-89-125(e), the only inquiry that is proper is whether testimony is being represented. The majority fails to cite any authority for the proposition that the origin of the testimony to be represented is relevant in determining whether the defendant should be afforded the constitutional right to be present.

Another purported distinction is that in *Davlin* the judge and counsel went into the jury room. Why that fact should make a difference is difficult to fathom. The beginning and end of our inquiry under *Davlin* is that prejudice is presumed if the provisions of section 16-89-125(e) are not strictly followed;[2] the lack of a record will prevent the State from proving that no prejudice occurred; the replaying of a taped statement is nothing less than the representation of evidence; and a defendant's constitutional right to be present is triggered by the representation of evidence.

Finally, it is well settled that our case law interpreting a statute becomes a part of that statute. *See, e.g., Estate of Hull v. Union Pacific R.R. Co.*, 355 Ark. 547, 141 S.W.2d 356 (2004); *Morris v. McLemore*, 313 Ark. 53, 852 S.W.2d 135 (1993). Today's decision effectively changes what the law has been for thirteen years under *Davlin v. State, supra*, and does so without any reference to the doctrine of *stare decisis* and the threshold inquiry that must precede a decision to overturn precedent: "[P]recedent governs until it gives a result patently wrong, so manifestly unjust, that a break becomes unavoidable." *Zinger v. Terrell*, 336 Ark. 423, 430, 985 S.W.2d 737, 741 (1999); *see McGehee v. State*, 334 Ark. 543, 975 S.W.2d 834 (1989) (citing *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968)). We also said in *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996):

> While we do have the power to overrule a previous decision, it is necessary, as a matter of public policy, to uphold prior decisions unless a great injury or injustice would result. The United States Supreme Court has recognized that adherence to precedent promotes stability, predictability, and respect for judicial authority. (Citations omitted.)

*Id.* at 435-36, 922 S.W.2d at 335. A change in the law is particularly regrettable when it affects a person who is appealing his death sentence.

For the above stated reasons, I must respectfully dissent.

CORBIN, J., joins this dissent.

---

[2] The presumption of prejudice will be rendered meaningless as a result of the majority's rationale that the jury would not have been "exposed to anything other than what was already played at trial."