Cite as 2020 Ark. App. 467

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-875

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** October 7, 2020 |
| JOHNATHAN PINNEY | APPELLANT | APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. 71CR-19-1] |
| V. |  | HONORABLE H.G. FOSTER, JUDGE |
| STATE OF ARKANSAS | APPELLEE | REVERSED AND REMANDED FOR A NEW TRIAL |

## LARRY D. VAUGHT, Judge

Johnathan Pinney appeals the sentencing order entered by the Van Buren County Circuit Court convicting him of first-degree terroristic threatening and sentencing him to thirty months' imprisonment. On appeal, Pinney argues that (1) there is insufficient evidence to support his conviction, and (2) the circuit court clearly erred in finding that he knowingly and intelligently waived his constitutional right to counsel. While we hold that substantial evidence supports the terroristic-threatening conviction, we further hold that the circuit court clearly erred in finding that Pinney waived his right to counsel during the pretrial hearings held in this case. Accordingly, we reverse and remand for a new trial.

The events giving rise to this case began in December 2018 when Officer Dallas Clark of Fairfield Bay Code Enforcement was notified by personnel of the Fairfield Bay Community Club that Pinney had purchased a vacant lot in the city and had erected a tent on the property.

Clark testified that the city has an ordinance prohibiting temporary structures and debris on undeveloped lots. A week later, Clark visited the lot. Pinney was not there, but Clark observed a tent, pallets, blankets, clothing, and other items on the property. Clark posted a notice on the property stating that the owner of the property was in violation of the city ordinance and had seven days to correct it.

According to Clark, Pinney came to Clark's office to discuss the alleged violation. Clark told Pinney he could not camp on the undeveloped lot and that building permits are required to build on the lot. The two planned to meet at the property later that day. Before going to Pinney's property, Clark visited with the Fairfield Bay chief of police, who informed Clark that Pinney had made threats against law enforcement who came onto his property. Clark testified that people sometimes think he is a police officer—and he is not—so he was afraid to return to Pinney's property, and he did not.

Christopher Waring testified that he is a lieutenant and assistant chief of police at the Fairfield Bay Police Department. He said that one of his duties is to issue citations for violations of city ordinances. He testified that in December 2018, he had received complaints that Pinney was camping in a tent on an undeveloped lot. Waring stated that he spoke with Clark about Pinney's code violation, and on December 30, Waring went to a road near Pinney's property and advised Pinney that living in a tent on the vacant lot was a violation of city ordinances. Waring also told Pinney that in three days Waring would return and issue Pinney a citation if the tent and other debris were not removed.

Waring said that within a day or two of that conversation, he received phone calls from "citizens" and other law enforcement officers advising that Pinney had made Facebook posts

2

wherein he commented about his interaction with Waring and he threatened to kill law enforcement. Waring stated that he does not have a Facebook account, but he nevertheless saw the posts on Facebook and downloaded and copied them. The posts read:

> any asshat comes along and causes a threat to me or my property theyre getting dowsed in gas and lit the fuck up....im done dealing with bullshit....
>
> . . .
>
> i dont care if a douche is wearing a silver star on his chest he steps foot on my land or fucks with my shit hes dead...im done dealing with the bullshit
>
> . . .
>
> Were taking the steps...we have our own land....getting info on a bobcat to build a hobbit hole and killing anyone steps foot on my land....problems solved...
>
> . . .
>
> Present plan: only means of entry to my land will be to drive onto my door which will be counterweighted to throw even a fucking tank off the cliff on the other side of the road...
>
> . . .
>
> I guess supposedly they have a security guard convinced they can create ordinances banning me from being on my own land until I have permits approving a build site . . . Im more apt to show them the world ive faced dig a hobbit hole like I said and they got no business what I do in my home....

Waring testified that he believed Pinney's Facebook posts were a direct threat against him (Waring) because Pinney was talking about protecting his property, and Waring had just been out to Pinney's property, and the threat was to law enforcement—"anybody with a star on their chest"—and he is a police officer. Waring stated that the posts caused him to feel as though his life would be in danger if he returned to Pinney's property.

3

Pinney testified that he purchased the lot in Fairfield Bay in early December. He said that he and his girlfriend had a tent, a microwave, a space heater, a hotplate, and some other basic resources on the property. Pinney also testified that he saw the notice of the violation posted on his property and that he met with Clark to discuss it. Pinney stated that he recorded the meeting with Clark and uploaded the video to Facebook. Pinney said that after he spoke with Waring, he researched the internet to find ways to defend his property and protect his girlfriend and himself. He admitted that he was preparing to use deadly physical force to defend his land if absolutely necessary. When asked by the prosecutor:

> You got on Facebook. You told everyone that you were going to light anyone who came on your property with gasoline – douse them with gasoline and light them up. And that anybody that come on your property, doesn't matter if a silver star was on their chest, they were dead. You then made that statement on Facebook?

Pinney answered, "Being the last resort – option that I could find to keep myself alive, yes." Pinney testified that he did not intend to terrorize Waring. Rather, he was "simply trying to defend my land, defend me and my girlfriend, and make sure that we were going to survive this winter; we had basic resources."

At the conclusion of the trial, the jury found Pinney guilty of first-degree terroristic threatening and recommended a thirty-month prison sentence, which was imposed by the circuit court in its sentencing order. This appeal followed.

Pinney's first argument on appeal is a challenge to the sufficiency of the evidence supporting his terroristic-threatening conviction. We address this issue first since the double-jeopardy clause precludes a second trial when a conviction in a prior trial is reversed solely for lack of evidence. *Brenk v. State*, 311 Ark. 579, 584, 847 S.W.2d 1, 4 (1993). We must decide this issue on appeal even though the case is being reversed and remanded on other grounds. *Id.*,

4

847 S.W.2d at 4. In considering the issue, we disregard other possible trial errors. *Id.* at 584–85, 847 S.W.2d at 4.

On appeal of a challenge to the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Adams v. State*, 2014 Ark. App. 308, at 2, 435 S.W.3d 520, 521. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*, 435 S.W.3d at 521–22. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.*, 435 S.W.3d at 522. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.*, 435 S.W.3d at 522. Any credibility determinations and the resolution of any conflicts in the evidence are for the finder of fact, not our court on appeal. *Id.*, 435 S.W.3d at 522.

The State bore the burden of proving the charge of terroristic threatening in the first degree. A person commits this offense if, with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Repl. 2013). A person acts "purposely" with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1). Our supreme court has held that the "conduct prohibited by this section is the communication of the threat with the *purpose* of terrorizing another. It is not necessary that the recipient of the threat actually be terrorized." *Smith v. State*, 296 Ark. 451, 455, 757 S.W.2d 554, 556 (1988) (emphasis in original). This court has held that the terroristic-threatening

statute requires that the defendant must intend to fill the victim with intense fright. *Knight v. State*, 25 Ark. App. 353, 356–57, 758 S.W.2d 12, 14 (1988).

Pinney argues on appeal that the evidence was insufficient to support his conviction for terroristic threatening because (1) his "general blathering" on his Facebook page did not directly communicate a threat to Waring and did not refer to or mention the Fairfield Bay Police Department, (2) Waring was not tagged on the Facebook post, and (3) Waring does not have a Facebook account. It is not necessary that the terroristic threat be communicated by the accused directly to the person threatened. *Richards v. State*, 266 Ark. App. 733, 585 S.W.2d 375 (1979) (upholding a conviction for terroristic threatening where the defendant told a third party that he had better get the victim away from the defendant or he would shoot the victim). Therefore, it is of no consequence that Waring did not have a Facebook page on which he directly received Pinney's threat, that Pinney did not tag Waring on the post, or that Waring first heard about the threats from third parties. Waring testified that he saw the posts on Pinney's public Facebook page, that he believed the threats were directed to him, and that he felt his life was in danger because of the threats in Pinney's posts.

The primary issue in this case is whether the State presented substantial evidence whereby the jury could conclude that Pinney had the intent, via his Facebook post, to fill Waring with intense fright. Criminal intent can seldom be proved by direct evidence and must usually be inferred from the circumstances. *Adams*, 2014 Ark. App. 308, at 2, 435 S.W.3d at 522. The finder of fact need not lay aside its common sense in evaluating the ordinary affairs of life and may consider and give weight to any false, improbable, or contradictory statements

6

made by the defendant to explain suspicious circumstances when determining criminal knowledge and intent. *Id.*, 435 S.W.3d at 522.

Here, the evidence demonstrates that within a day or two of Waring speaking to Pinney near his property and advising Pinney that he was in violation of a city ordinance, Pinney admitted that he made a Facebook post, and in this post he threatened to kill "any asshat" who stepped on his property and did not care if the "douche" was "wearing a silver star on his chest." He also stated, "[T]hey have a security guard convinced they can create ordinances banning me from being on my own land." In light of this evidence, a jury could have reasonably concluded that Pinney was referring to Waring—who is a police officer, who had just been to Pinney's property about the ordinance, and who had stated to Pinney that he would return to the property in three days—and was referring to the ordinance that Waring had just met with Pinney about.[1]

Furthermore, Pinney admitted at trial that after his meeting with Waring, he researched on the internet ways to protect his property and that he was preparing to use deadly force to defend his property, his girlfriend, and himself. In light of this evidence, the jury could have reasonably believed that Pinney intended to fill Waring with intense fright.

The cases on which Pinney relies for reversal—*Knight* and *Roberts v. State*, 78 Ark. App. 103, 78 S.W.3d 743 (2002)—are distinguishable. In *Knight*, the threat in question was a statement made by the defendant while in his jail cell to other inmates and was, unknown to Knight, overheard by a deputy in another room through the intercom system. *Knight*, 25 Ark.

---

[1]The jury could have also concluded that the ordinance Pinney referred to in his Facebook post was the one Waring discussed with him because Pinney admitted at trial that he uploaded the video of his meeting with Clark wherein they discussed the same ordinance.

App. at 355, 758 S.W.2d at 13. The evidence at trial was that the defendant did not know that the deputies could listen to what he was saying in his cell. *Id.* at 356, 758 S.W.2d at 13. We held that although the defendant was aware that it was possible his statement might be overheard, that was insufficient evidence of the required intent, and the statute does not impose criminal liability for threats made in reckless disregard of the risk of causing terror. *Id.* at 357, 758 S.W.2d at 14.

In *Roberts*, the threat in question was a student's "hit list" in his school notebook that was discovered by a teacher and was not given to the students named on the list. *Roberts*, 78 Ark. App. at 104, 78 S.W.3d at 744. Because the names of the students on the list were kept in a privately held notebook, our court held that there was insufficient evidence of the defendant's intent to communicate terror to them. *Id.* at 108, 78 S.W.3d at 746.

In contrast to *Knight* and *Roberts*, as set forth above, there is substantial evidence of Pinney's intent to terrorize Waring. Pinney communicated his terrorizing threats on his public social media page within days of his exchange with Waring, and Pinney's threats contained sufficient identifying information such that a jury could conclude that he intended to cause intense fright to Waring. We acknowledge that Pinney testified he did not intend to terrorize Waring, but the jury did not have to believe his testimony. Therefore, we hold that substantial evidence supports the first-degree terroristic-threatening conviction.

Pinney's second point on appeal is that the circuit court clearly erred in allowing him to proceed pro se. The right of a criminal defendant to proceed pro se was delineated in *Faretta v. California*, 422 U.S. 806 (1975), where the Supreme Court held that "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits

8

[traditionally associated with the right to counsel]." *Hatfield v. State*, 346 Ark. 319, 324–25, 57 S.W.3d 696, 700 (2001) (citing *Faretta*, 422 U.S. at 835). The Supreme Court further stated that although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Hatfield*, 346 Ark. at 325, 57 S.W.3d at 700 (citing *Faretta*, 422 U.S. at 835; *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)). The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel. *Id.* at 326, 57 S.W.3d at 700–01 (citing *Scott v. State*, 298 Ark. 214, 766 S.W.2d 428 (1989) (quoting *Patterson v. Illinois*, 487 U.S. 285 (1988))).

Pinney argues that he did not knowingly and intelligently waive his right to counsel in five pretrial hearings. In his first pretrial hearing, Pinney stated to the court, "I do not plan on taking the Public Defender's office to represent me . . . ." He pled not guilty and advised the court that he had filed a motion to dismiss alleging that Waring lied in his affidavit supporting the arrest warrant; therefore, the warrant lacked probable cause. The court stated that it would take up Pinney's motion at the next pretrial hearing and that if Pinney changed his mind about wanting a lawyer, the court would appoint him one. During the second pretrial hearing, the circuit court heard Pinney's pro se motion to dismiss and denied it. During this hearing, Pinney orally moved for the circuit court to recuse itself because it had authorized Waring's warrant. The court denied this motion.

9

At the third pretrial hearing, the circuit court acknowledged that Pinney had filed numerous pro se motions, but the docket would not allow the court to address them that day. Pinney orally moved again that the court recuse itself, and the motion was denied. During the fourth pretrial hearing, Pinney argued a pro se motion for bond reduction, and the court denied the motion. Pinney also reasserted his motion to dismiss, advising the court that he (from jail) had several subpoenas issued and served on witnesses he wished to testify in support of his motion to dismiss, but none of the witnesses appeared for court. The court continued Pinney's motion to dismiss and appointed Pinney an attorney from the public defender's office for the limited purpose of assisting him during the pretrial hearings—in particular, to assist with the issuance of subpoenas. At the fifth pretrial hearing, Pinney argued his motion to dismiss again, and the court denied it again.

Pinney asserts that during these pretrial hearings, the court never adequately advised him that he had an absolute constitutional right to counsel and did not make him aware of the dangers and disadvantages of self-representation. The State concedes the argument.

A criminal defendant has a Sixth Amendment right to an attorney at every critical stage of the proceedings. *Anderson v. State*, 367 Ark. 536, 542, 242 S.W.3d 229, 234 (2006) (citing *Hammett v. Texas*, 448 U.S. 725 (1980)). A criminal defendant has a due-process right to be present at critical stages of the proceeding. *Id.*, 242 S.W.3d at 234 (citing *Kentucky v. Stincer*, 482 U.S. 730 (1987)). The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable. *Id.*, 242 S.W.3d at 234 (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). A critical stage in a criminal proceeding is every stage in which substantial rights of the criminal

10

defendant may be affected. *Id.*, 242 S.W.3d at 234 (citing *Mempa v. Rhay*, 389 U.S. 128 (1967)). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Id.*, 242 S.W.3d at 234 (citing *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa. 2003)). In *Shabazz v. State*, 2018 Ark. App. 399, at 15, 557 S.W.3d 274, 282, our court held that the denial of counsel at a pretrial suppression hearing is a structural defect requiring absolute reversal.

We hold that the pretrial hearings in this case were critical proceedings—the circuit court denied five of Pinney's pro se motions: two motions to dismiss, a motion for bond reduction, and two motions to recuse. We further hold that the circuit court clearly erred in failing to conduct a proper *Faretta* inquiry during these pretrial proceedings. At no time during the five hearings did the circuit court explain the legal pitfalls of self-representation to Pinney or adequately explain the risks or the consequences of proceeding without counsel. Because there was an insufficient investigation into whether Pinney's willingness to proceed was knowingly or intelligently asserted, and the circuit court's questioning on the matter of Pinney's desire to proceed pro se did not meet the constitutional minimum as set forth by our supreme court, we hold that the violation of Pinney's right to counsel requires us to reverse and remand for a new trial. *Shabazz*, 2018 Ark. App. 399, at 16, 557 S.W.3d at 283.

Pinney's last argument on appeal is that he did not knowingly and intelligently waive his right to counsel for his jury trial. We cannot reach the merits of Pinney's argument because as a general rule, our appellate courts will not review issues that are moot. *Alandt v. State*, 2018 Ark. App. 493, at 2, 561 S.W.3d 764, 765. To do so would be to render advisory opinions, which this court will not do. *Id.*, 561 S.W.3d at 765. A case becomes moot when any judgment

11

rendered would have no practical legal effect upon a then existing legal controversy. *Id.*, 561 S.W.3d at 765.[2] In the case at bar, because we are reversing and remanding for a new trial due to errors that occurred during the pretrial proceedings, a ruling on Pinney's argument relating to whether he waived his right to counsel at trial would be an advisory opinion. Therefore, we decline to address it.

Reversed and remanded for a new trial.

GRUBER, C.J., and MURPHY, J., agree.

*Hancock Law Firm*, by: *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.

---

[2]Two exceptions to the mootness doctrine have been recognized: issues that are capable of repetition yet evade review and issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Alandt*, 2018 Ark. App. 493, at 2, 561 S.W.3d at 765. These exceptions do not apply.