Cite as 2021 Ark. App. 132

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-20-320

| | |
|---|---|
| CARL WYNN<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** March 17, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION<br>[NO. 60CR-18-2838]<br><br>HONORABLE HERBERT WRIGHT, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Carl Wynn appeals the sentencing order entered by the Pulaski County Circuit Court convicting him of first-degree terroristic threatening. On appeal, Wynn argues that (1) insufficient evidence supports his conviction; (2) the circuit court abused its discretion in denying his motions for continuance to obtain a necessary witness for trial; and (3) the circuit court erred in allowing the State to amend the felony information at trial. We affirm.

On August 1, 2018, Wynn was charged as a habitual offender with first-degree terroristic threatening of Joshua LaFever.[1] A bench trial was held on December 18, 2019, at

---

[1]The State originally alleged that Wynn had previously been convicted of more than one but fewer than four felonies and should be sentenced pursuant to Arkansas Code Annotated section 5-4-501(a) (Supp. 2020). The State later amended the information alleging that Wynn had previously been convicted of more than four felonies and should be sentenced pursuant to section 5-4-501(b).

which LaFever testified that in May 2017, he lived with his wife and two sons on Asbury Road in Little Rock. He said that he was preparing to sell his house and had loaded trash into his father's truck, which was parked at his house. On May 25, LaFever left work and went home to drive the trash in the truck to the dump. When he arrived, roofers were working on his house. LaFever exited his vehicle and got into his father's truck, which is when Wynn, who lived across the street, came over to LaFever and angrily screamed, "Why do you have those wetbacks on your roof?" LaFever testified that he closed the truck door, but Wynn yanked it back open, aggressively poked LaFever in the chest, and told him he was going to federal prison for hiring the people on his roof. LaFever testified that Wynn threatened to kill his wife and his children, whom he called "nigglets."

LaFever testified that when he called 911, Wynn ran into his house. However, he came back out with his car keys and continued to yell at LaFever, calling him and his children racial slurs and telling LaFever he was going to need "twenty-four-hour-a-day protection." LaFever recorded part of the encounter on his cell phone, which was played at trial.

LaFever stated that the police arrived pretty quickly after he called 911, but Wynn had already left. LaFever said that he and his wife went to the police department the next morning and spoke with Little Rock Police detective Rick Harmon to whom they gave a statement. LaFever testified at trial that he did not remember Wynn's making a specific threat to kill him, but he believed that when Wynn told him that he needed twenty-four-hour protection, the statement was a direct threat against him and his family.

Danielle Paul, LaFever's sister-in-law, was a college student and was living with the LaFever family in the summer of 2017. Paul testified that she was at the LaFever home to help

2

take the trash to the dump when Wynn, who was "very upset," came out of his house yelling racial slurs at LaFever "about Mexicans working on the roof." She said that LaFever tried to get in his truck, but Wynn pulled the door open and continued to yell at LaFever. She stated that LaFever told her to return to her car. Paul said that she heard Wynn make threats to LaFever, his wife, and their children. She heard Wynn say he was "going to kill [LaFever's] fat wife and his two 'nigglet' children." She testified that Wynn went back to his house when LaFever threatened to call the police. However, he came back out, yelled at LaFever, and then left in his vehicle. She stated that she later gave a statement to Harmon over the phone.

Rose Lott lived on Asbury Road in May 2017. She testified at trial that she was pulling her trash to the street on May 25 when she observed Wynn run over to LaFever's truck and hit it with his hand. She testified that she could hear arguing and yelling between the two men, but she could not hear what they were saying.

Harmon testified that he was assigned to investigate the incident that occurred on May 25. He stated that he reviewed the incident report prepared by another officer and took an in-person statement from LaFever and a telephone statement from Paul. According to Harmon, LaFever and Paul both testified that Wynn threatened LaFever and his family. Harmon testified that because LaFever's and Paul's statements were consistent with each other and with the incident report, he wrote an affidavit for the arrest of Wynn for first-degree terroristic threatening. Harmon testified that Wynn was not arrested until over a year after the incident.

Following the testimony of Harmon, the State rested and moved to amend the felony information to include LaFever's wife and children as victims. Over Wynn's objection, the circuit court granted the motion. Thereafter, Wynn moved to dismiss the case; however, the

3

motion was denied by the circuit court. The defense rested without calling any witnesses. After closing arguments, the circuit court found Wynn guilty of first-degree terroristic threatening and further found that he is a habitual offender with more than four prior felony convictions. Following a sentencing hearing held on January 13, 2020, the circuit court sentenced Wynn to twelve years' imprisonment. This appeal followed.

Wynn's first point on appeal is a challenge to the sufficiency of the evidence supporting his first-degree terroristic-threatening conviction. On appeal of a challenge to the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Pinney v. State*, 2020 Ark. App. 467, at 5, 609 S.W.3d 671, 676. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*, 609 S.W.3d at 676. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.*, 609 S.W.3d at 676. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.*, 609 S.W.3d at 676.

The State bore the burden of proving the charge of terroristic threatening in the first degree. A person commits this offense if, with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2020). A person acts "purposely" with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

Wynn contends on appeal that there is no substantial evidence that he threatened LaFever or his family with serious physical injury or death. He argues that the video fails to include any language by Wynn that constituted a threat of serious physical harm or death against LaFever or his family and that, at most, Wynn "lobbed several racial epithets toward LaFever," which do not constitute a threat to inflict death or serious injury. Wynn also argues that there was no substantial evidence introduced that shows Wynn acted with the purpose to terrorize LaFever or his family. Finally, Wynn argues that the statements and testimony of LaFever and Paul are fraught with inconsistencies and bias such that they cannot constitute substantial evidence supporting the first-degree terroristic-threatening conviction.

Much of Wynn's sufficiency argument is not preserved for appeal. At the close of the State's evidence, Wynn moved to dismiss, arguing:

> Based on the testimony that we have here today, I cannot say that the State has met its burden in proving beyond a reasonable doubt that Carl Wynn engaged in the act of [t]erroristic [t]hreatening against Joshua LaFever . . . and . . . his family.

Wynn then argued that there were inconsistencies between LaFever's and Paul's statements and their trial testimony and that LaFever and Paul lacked credibility for various reasons. Wynn's counsel concluded: "I just believe for the overall credibility of the witnesses, the State has not met their burden of proof of this matter, and we ask that it be dismissed."

Rule 33.1(b) of the Arkansas Rules of Criminal Procedure requires that a criminal defendant, in a nonjury trial, make a specific motion for dismissal at the close of all the evidence and that it shall state the specific grounds therefor. Ark. R. Crim. P. 33.1(b) (2019). Rule 33.1(c) provides:

> The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a

waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(c).

Wynn's motion to dismiss at trial did not include the arguments that the State failed to prove that his purpose was to terrorize the LaFevers or that the State failed to prove that he threatened LaFever or his family with serious physical injury or death. Because Wynn raises these arguments for the first time on appeal, we hold they are not preserved. *Warren v. State*, 2019 Ark. App. 33, at 4, 567 S.W.3d 105, 108 (holding that an argument that is not specified in a motion to dismiss is not preserved for appeal).

The sufficiency challenge that is preserved for appeal turns solely on the credibility of the witnesses. With regard to the credibility of witnesses and inconsistencies in witness testimony, it is the province of the circuit court, not the appellate court, to evaluate witness credibility and to resolve any conflicts in the evidence. *Washington v. State*, 2010 Ark. App. 339, at 6–7, 374 S.W.3d 822, 826. Resolution of conflicts in testimony and assessment of witness credibility is for the finder of fact. *Id.* at 7, 374 S.W.3d at 826.

Viewed in the light most favorable to the State, the evidence established that Wynn was upset and angry when he ran up to LaFever, he hit LaFever's truck with his hand, he yelled and screamed racial slurs at LaFever, he yanked open LaFever's truck door and aggressively poked him on the chest, he threatened to kill LaFever and his family, and he told LaFever he would need twenty-four-hour protection. Video of the incident captured the threat.

6

There is also circumstantial evidence of Wynn's guilt. When LaFever told Wynn that he was calling 911, Wynn left the neighborhood. LaFever testified that Wynn "absconded from the police for over a year," and Harmon confirmed that Wynn was not arrested until more than a year after the incident. The circuit court could have reasonably concluded that Wynn's flight was circumstantial evidence of his guilt. *Hill v. State*, 325 Ark. 419, 425, 931 S.W.2d 64, 67 (1996) (holding that flight from the scene of a crime is relevant and admissible circumstantial evidence that may be considered in determining guilt). Accordingly, we hold that substantial evidence supports Wynn's first-degree terroristic-threatening conviction.

Wynn's second point on appeal is that the circuit court abused its discretion in denying his motions for a continuance to obtain a necessary witness for trial. The witness in question is Jose Alberto. His name is listed as a witness on the May 25 police report. According to the report, Alberto was the foreman of the roofing crew and said that Wynn yelled racial slurs at him and his crew.

Wynn's bench trial was originally scheduled for December 17, 2019. On December 13, Wynn filed a motion for a continuance advising the court that Alberto was a necessary witness and that attempts to locate and subpoena him for trial had failed. On December 17, a hearing was held on Wynn's motion for continuance. Wynn argued that Alberto was a necessary witness because "his testimony goes against the allegations that the victims in this case have against [Wynn]." Wynn's counsel admitted that he had been looking for Alberto for only a week and that he had been unable to locate Alberto. However, within the last twenty-four to forty-eight hours, Wynn's counsel had located an individual at a different address named Vega Silva who matched Alberto's age, description, and occupation. Wynn's counsel visited with

7

Silva over the phone, but Silva did not want to be involved in the trial. The State opposed the motion for a continuance.

While the circuit court stated that it was denying Wynn's motion for a continuance, it reset the trial for the following day. The court also invited Wynn to file a motion for a subpoena for the individual matching Alberto's description, which Wynn's counsel did on December 17. The circuit court granted the motion on December 18. At the outset of the December 18 bench trial, Wynn's counsel renewed his motion for a continuance informing the court that neither he nor the Pulaski County Sheriff's Office had been able to serve "Alberto" with the subpoena at the new address. The circuit court denied the renewed motion for a continuance.

Arkansas Rule of Criminal Procedure 27.3 (2019) provides that

[t]he court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

A circuit court should consider the following factors in deciding whether to grant a continuance: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit stating not only what facts the witness would prove but also that the appellant believes them to be true. *King v. State*, 2020 Ark. App. 532, at 9, 614 S.W.3d 823, 829; *see also* Ark. Code Ann. § 16-63-402(a) (Repl. 2005).[2] We review the denial of a motion for continuance for abuse of discretion. *Id.*, 614 S.W.3d at 829.

---

[2]Arkansas Code Annotated section 16-63-402(a) provides:

Wynn argues that the circuit court abused its discretion in denying his motions for continuance because his counsel made diligent efforts to procure Alberto for trial, the probable effect of Alberto's testimony would have cast doubt on the testimony of LaFever and Paul and caused reasonable doubt on the issue of whether Wynn committed first-degree terroristic threatening, and it was likely the defense could procure Alberto for trial if given a continuance.

We disagree. The evidence demonstrates that Wynn was not diligent in his efforts to locate Alberto. This case has been pending since August 2018, yet Wynn admittedly did not seek to locate Alberto until one week before trial. Wynn's motion for a continuance came just four days before the scheduled trial.

Also, Wynn has not established the probable effect of Alberto's testimony. Wynn contends that Alberto would have testified that (1) he informed law enforcement that he saw and heard the statements made by Wynn to LaFever, (2) he told the police that Wynn called him and his workers racial slurs and called LaFever racial slurs, and (3) he did not inform law enforcement that he heard any threats of serious physical injury or death from Wynn directed at anyone at the scene. This is a mischaracterization of what the police report states, which is that "J. Alberto, foreman for the roofing company, said susp-1 yelled racial slurs at him and his crew." Contrary to Wynn's argument, this report is not inconsistent with the statements or

A motion to postpone a trial on account of the absence of evidence shall, if required by the opposite party, be made only upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant believes them to be true, and that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement.

trial testimony of LaFever and Paul. Wynn's contention that Alberto would have testified that Wynn did not threaten LaFever and his family on the basis of the information attributed to Alberto in the incident report is sheer speculation.

Moreover, Wynn has failed to demonstrate any likelihood that he could produce Alberto had a continuance been granted. At the December 17 hearing, Wynn's counsel stated that he could not locate Alberto. Instead, Wynn's counsel had identified a different man who supposedly matches Alberto's description—Silva. There is no evidence that Silva is actually Alberto. And despite the circuit court's issuance of a subpoena for Silva, neither Wynn's counsel nor the Pulaski County Sheriff's Office could serve the subpoena on him the day of trial.

Finally, Wynn failed to provide an affidavit in support of his written motion for continuance, which was required because the State opposed the motion. Ark. Code Ann. § 16-63-402(a) (Repl. 2005). The supreme court has held that a circuit court does not abuse its discretion in denying a request for continuance when the motion is not in substantial compliance with section 16-63-402(a). *Griffin v. State*, 322 Ark. 206, 216, 909 S.W.2d 625, 631 (1995). After consideration of all the applicable factors, we hold that the circuit court did not abuse its discretion in denying Wynn's motions for continuance.

For Wynn's third and final point on appeal, he argues that the circuit court erred in allowing the State to amend the felony information at trial to include LaFever's wife and children as victims. A prosecuting attorney, with leave of the court, may amend an indictment as to matters of form but not so as to change the nature or degree of the crime charged. Ark. Code Ann. § 16-85-407(a), (b) (Repl. 2005). Section 16-85-407 provides a criminal defendant

with protection against being prejudiced through surprise. *Hoover v. State*, 353 Ark. 424, 428, 108 S.W.3d 618, 620 (2003).

Under this point, Wynn, in conclusory fashion, contends that the amendment that added victims to the original terroristic-threatening charge changed the nature of the charge itself. He cites *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982), *overruled on other grounds by White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986), for support. In *Harmon*, the felony information alleged that Harmon had committed capital felony murder in the course of a kidnapping; however, after the jury was sworn, the circuit court allowed the State to amend the information to alternatively charge that Harmon had committed capital felony murder in the course of a robbery. *Id.* at 266–67, 641 S.W.2d at 22. In finding that the amendment constituted reversible error, the supreme court held that the amendment changed the nature of the offense and required Harmon to defend against an essentially different charge— aggravated robbery rather than kidnapping. *Id.* at 270, 641 S.W.2d at 24.

*Harmon* is clearly distinguishable from the case at bar. The amendment adding three victims to Wynn's original charge of first-degree terroristic threatening in no way changes the nature or degree of the charge.

The crux of Wynn's argument under this point on appeal is that the amendment to the information was prejudicial to him. He contends that he was unfairly surprised by the amendment and that it destroyed his defense theory that was focused on demonstrating that he made no threat of serious physical harm or injury to LaFever.

We disagree and hold that the circuit court did not err in granting the motion to amend the felony information because Wynn suffered no prejudice as a result. The record reveals that

11

the LaFever children are listed as victims of Wynn's threats in the May 25, 2017 police report. Wynn's counsel admitted at trial that LaFever's statement to police in 2017 was that Wynn had made threats to kill him and his family. The forensic mental-health report, filed with the circuit court on November 13, 2018, stated that Wynn was "alleged to have threatened to cause death or serious physical harm to his neighbor, his neighbor's wife, and their two children." Finally, while Wynn did emphasize LaFever's testimony that he could not remember at trial whether Wynn specifically threatened to kill him on the day in question, it is clear that Wynn's overall defense strategy was to deny that any terrorizing act occurred by attacking the credibility of LaFever and Paul.

In sum, the evidence demonstrates that Wynn had repeatedly been put on notice that the allegation of first-degree terroristic threatening included threats to LaFever *and* his family. Because he suffered no prejudice by the amendment, we hold that the circuit court did not err in granting the State's motion to amend the information to conform to the proof presented at trial.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*James Law Firm*, by: *William O. "Will" James III* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.